**SCHUELER, Plaintiff-Appellee, v LYNAM, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1915.   Decided May 6th, 1947.

Floyd Koogler, and Howard Durst, both of Dayton, for plaintiff-appellee.

Gertrude Bucher, Dayton, for defendant-appellant.

## OPINION

By THE COURT

This is an appeal on law and fact from a judgment and decree of the Common Pleas Court of Montgomery County, Ohio, cancelling a deed and ordering the title to certain real estate quieted as against the defendant-appellant.

In her petition the plaintiff-appellee alleges that she is the sole devisee and beneficiary under the will of Elnora Lynam, deceased, which was admitted to probate by the Probate Court of Montgomery County, Ohio; that Elnora Lynam died on April 15, 1944, owning lots numbered 24561, 24562, 24563 and 24564 on the plat of the city of Dayton, Ohio; that the defendant, on May 18, 1944, recorded an instrument which purported to be a deed executed by Elnora Lynam to the defendant for said property, which the plaintiff claims was not a good and valid deed, and prays that said deed be cancelled and that the title to said property be quieted.

The defendant-appellant, in his answer, alleges that the deed in question was executed by Elnora Lynam and her husband, William Lynam, on March 4, 1939, and delivered to him on March 10, 1939, and denies all the material allegations contained in said petition.

By stipulation, it was agreed that this case be submitted to this court on the transcript of the testimony taken in the trial court, together with some additional testimony taken before a Special Master Commissioner appointed by this court. A transcript of the additional testimony taken has been filed.

The sole question for the court to determine is whether the instrument, which purports to be a deed, executed March 4, 1939, is valid. On the issues made the plaintiff carries the burden of proof. In an equitable proceeding, where the plaintiff prays for the cancellation of a deed filed of record and that the title to real estate be quieted, the burden of proof must be sustained by clear and convincing evidence. Ford v Osborne, 45 Oh St 1; Refining Company v Wagner, 24 C. C. (N. S.) 275; Kerins v Maumee Valley Mortgage Company, 7 Abs 43; Vol. 33 O. Jur. p. 939, Sec. 135.

The record shows that the court below permitted counsel a wide latitude in the examination of witnesses. Under the technical rules of evidence some of the testimony would have been incompetent. Much testimony was introduced for the sole purpose of impeachment, some of which was proper and some of which was improper will be disregarded. In Vol. 42 O. Jur. p. 387, Sec. 378, it is stated that:

"In Ohio, it is held that the proof to impeach a witness's credit or truth and veracity is limited to his reputation in that respect, and that it is not competent to inquire of the general reputation of the witness, or to prove his turpitude in any respect for that purpose. The rule which permits an attack upon the credibility of a witness in a civil case is confined to proving a reputation of want of·veracity and does not allow proof involving the general moral character of the witness."

The evidence shows that prior to June 1, 1938, the record title to lots numbered 24560, 24561, 24562, 24563 and 24564 stood in the name of William I. Lynam. On this date he deeded said lots to Elnora Southwick. Within the month William I. Lynam and Elnora Southwick were married. This deed was not filed for record until July 13, 1940. The instrument which purports to be a deed from Elnora Lynam·to David Lynam for these five lots, the validity of which is questioned, was dated March 4, 1939, but not filed for record until May 18, 1944, which was after the death of William I. Lynam, who died May 8, 1942, and also after the death of Elnora Lynam, which occurred April 15, 1944. The will of Elnora Lynam, executed on February 7, 1944, was duly probated in the Probate Court of Montgomery County, Ohio, on May 6, 1944. The plaintiff, Matilda Schueler, is named as sole beneficiary and Executrix. Item Two of said will, which is the only dispositive clause, is as follows:

"I give, devise and bequeath all of my property, both personal and Real Estate to my beloved Aunt, Matilda Schueler, of Dayton, Ohio;—The residue of all my estate that I may die seized of."

The record shows that lot numbered 24560 had been deeded to William and Eleanor Wentz by Elnora Lynam and William Lynam, under date of August 29, 1941. On the date the deed was executed the Wentz's executed a purchase money mortgage in favor of Elnora Lynam for Twelve Hundred Dollars ($1200.00). The deed and mortgage were both filed for record on September 4, 1941. Thus, the title to lot numbered 24560 is not involved in this controversy. After her appointment as executrix Matilda Schueler promptly effected an estate appraisal of lots numbered 24561, 24562, 24563 and 24564 and immediately sought a purchaser for said real estate. Within a

few days after the appraisal had been made Drewey H. Wysong, who, up to this time, had acted as attorney for Matilda Schueler in the settlement of said estate, called her over the telephone and told her he had a purchaser for the property. Mrs. Schueler informed him that her niece had assisted her in procuring a purchaser, and that she had already sold the property. Whereupon, Mr. Wysong told her: "Since you don't want to listen to my suggestions you get another attorney, maybe your niece can represent you." Up until this date the relationship between Mrs. Schueler and Mr. Wysong had been very friendly; he had represented her in other legal matters. With this conversation, however, Mr. Wysong terminated his legal services and Mrs. Schueler immediately obtained other legal counsel. It was at this time that the whole matter took a sudden turn. A series of conversations and circumstances took place, about which much testimony was taken, which is contradictory in character. To attempt to reconcile the testimony would be impossible and to attempt to analyze all the testimony would serve no useful purpose and would unduly lengthen this opinion. We recite only such parts of the testimony which have a direct bearing on the issues presented, and which may disclose the underlying motive or purpose of those persons participating in certain transactions and why they pursued a certain line of conduct.

Within a few days after the conversation took place between Mrs. Schueler and Mr. Wysong the defendant, David Lynam, according to his own testimony, called on Mrs. Schueler and asked her whether she had found a deed to him for said property; upon being told she had found no such deed he called Wysong and asked about the deed; that Wysong at first disclaimed any knowledge of the deed; that later David Lynam called at Wysong's office and found a person by the name of Kennedy reading the deed in question; that Wysong gave him the deed and he, thereupon, on May 18, 1944, filed said deed for record. David Lynam claims Elnora Lynam and William Lynam, who signed a release of dower in said purported deed, delivered the deed to him in the presence of Wysong in 1939, and that he requested Wysong to keep it for him, although both David Lynam and Wysong testified that they were not on friendly terms at that time. David Lynam claims that at the time the instrument was delivered he gave William Lynam $50.00, and that he had previously, at regular intervals over a period of years, given sums of money to William Lynam; that the purported deed was for such past consideration and also to compensate David Lynam by reason of an unequal divi-

sion of the estate of the parents of David Lynam and William Lynam, which occurred in 1916.

There is testimony of sound probative value to the effect that William Lynam was employed up until a short time before his death; that Elnora Lynam had received $10,000.00 as proceeds from life insurance upon the death of her first husband, and that a short time before her marriage to William Lynam had a bank deposit of considerable size, and other investments, and that neither she nor William Lynam had any occasion to ask alms. A review of the testimony of David Lynam on this matter shows that his testimony is not very satisfactory. There is testimony, too, to the effect that David Lynam did not visit Elnora Lynam and William Lynam after their marriage and that he only saw Elnora Lynam a few times; that David Lynam and Elnora Lynam were not on friendly terms; that at one time when David Lynam went over to the home of Elnora Lynam she chased him away by stating: "What the hell you want out here?"

There is evidence of strong probative value to the effect that Wysong wanted to obtain this property for his son; that Wysong had made statements to the effect that William Lynam had stated that he intended Wysong to have his property after his death because of their great friendship; that Elnora Lynam and William Lynam had consulted him about the execution of wills, each devising their property to the other; but Wysong advised against the execution of wills and advised signing deeds in blank, with the suggestion that the survivor destroy the one deed; that a deed was better than a will. There is also testimony to show that two blank deeds, on which appeared the signatures of Elnora Lynam and William Lynam, were seen in Wysong's office; that he stated they would have to be filled in and that he would have his daughter, Mabel, do it; that after he had the conversation with Matilda Schueler, at which time he ceased to act as her attorney, he held a conversation in his office with David Lynam, at which time he said to David Lynam that William Lynam wanted him (Wysong) to have the property, but he didn't want to be a hog, and that David Lynam could have one-half the property and he (Wysong) would take the other half; that thereupon Wysong typed an agreement between David Lynam and himself, which David Lynam signed; that the blank deed on which appeared the signatures of Elnora Lynam and William Lynam was then filled out, making David Lynam the grantee; that David Lynam took the instrument and walked out of the office.

There is evidence to the effect that on the evening after

Elnora Lynam died Wysong called at the residence, and, in the presence of two witnesses while discussing the execution of wills, Wysong stated that there was a blank deed in his office signed by Elnora and William Lynam; that when he was asked whether there could two deeds to the property he answered: "Why, you can have as many as you want to, but can't record more than one at a time, and in case anything happens you can fill in the deed."

The record further shows that William Lynam, in 1936, gave a mortgage on lots numbered 24560, 24561 and 24562 to the Lincoln Federal Savings and Loan Association of Dayton. At that time the Lynams deeded lot numbered 24560 to the Wentz's, this lot was released from the blanket loan and Wentz's executed a mortgage to the Loan Association for $1800.00. The amount of the Wentz loan was used to reduce the original loan by the Lynams. After David Lynam had his instrument recorded the Wentz's attempted to sell lot numbered 24560. The Lincoln Federal Savings and Loan Association had agreed to make a new loan, but finding this instrument to David Lynam on record the Association refused to pass the title. It was arranged to have David Lynam and wife execute a quit claim deed to lot numbered 24560. Such a deed was executed in the Association offices. The Secretary of the Association took the acknowledgment and he and a clerk acted as witnesses. The Secretary and clerk testified that at the time of the execution of the quit claim deed David Lynam stated that he had no interest in the property. It is observed that the instrument under which David Lynam claims title, and which is in controversy, included lot numbered 24560, and bears a date prior to the date said lot was conveyed to Wentz.

There is evidence tending to show that Wysong, although not an attorney of record in the instant case, did attempt to influence certain witnesses. One witness testified that Wysong called him a few days before his testimony was to be taken and told the witness not to appear; that at that time Wysong stated to him it would be embarrassing if he testified. In a conversation over the telephone with one of the witnesses for the plaintiff, Wysong, upon being asked how the case was coming along, stated he had to give $50.00 to Kennedy, a witness for the defense. Wysong denied having such a conversation, although the telephone call was made from the office of Mr. Durst, attorney of record for the plaintiff in this case. Mr. Koogler, co-counsel for plaintiff, and a reputable member of the profession, testified that he had dialed Wysong's telephone number in Mr. Durst's office and heard Wysong answer; that

Wysong spoke in his customary, loud voice, and that he heard Wysong make the statement to the witness that he gave $50.00 to Kennedy.

On cross-examination David Lynam testified as follows:

"Q. You didn't find the deed at Drewey's the first time you contacted him did you?

A. No, because he was working for the one party.

Q. What?

A. Working for your party."

Again, on cross-examination, David Lynam, when questioned why he waited several years to place the instrument on record, testified that it (referring to the instrument) wasn't ready yet, that he wasn't ready to get it. Upon being pressed for an explanation as to why he wasn't ready to get it he stated that he was too busy. He also testified that he had only met Wysong once, had never been to his office, and didn't know where his office was on the day he turned the instrument over to Wysong for safe-keeping, and did not learn where Wysong's office was until the day he called for the instrument in question.

In determining whether Elnora Lynam executed and delivered a completed deed to David Lynam the court should give considerable weight, under the circumstances, to the following facts, which are undisputed: That if this instrument is valid Elnora Lynam and William Lynam parted with the ownership of practically all their assets soon after their marriage; the unfriendly feeling existing between Elnora Lynam and David Lynam; lack of acquaintanceship and unfriendly feeling existing between David Lynam and Wysong; that no instructions were given by David Lynam to Wysong as to the disposition of the instrument; the fact that Wysong did not keep the instrument with other such instruments in his office; the failure of David Lynam to record the instrument or make any effort to find the instrument after the death of his brother, as he testified that he did not trust Elnora Lynam, stating she was a grasping woman; that he paid no taxes, insurance and made no repairs on said property and made no payments on the mortgage and disclaimed any interest in one lot embraced in the instrument, which was later conveyed to Wentz. These matters and the chain of circumstances narrated, together with the unsatisfactory character of much of the testimony presented by the defense when given the weight to which it is entitled, would be sufficient to cause the court to doubt the

validity of the instrument as a completed deed of conveyance. When the owner of property participates in a series of legal transactions in regard thereto, over a period of years, and consistently deals with said property as her own, and the person who claims title to said property after the death of the owner followed a line of conduct during the life of the owner consistent with the ownership in her and inconsistent with the ownership in himself, the court will accept with caution, and regard with suspicion any evidence introduced in support of his claim of ownership, where the validity of the instrument under which he claims title is seriously questioned, and was not produced until after the death of the owner.

However, there is still another chain of circumstance supported entirely by documentary evidence and undisputed, which is clear and convincing evidence that Elnora Lynam and William Lynam never intended or considered the instrument in question to be a valid deed of conveyance to David Lynam. These transactions took place in the following chronological order: One June 1, 1938, Drewey Wysong, acting as attorney for William Lynam, drew a deed for all five lots, in which William Lynam deeded said property to Elnora Southwick. Wysong took the acknowledgment and acted as a witness; Wysong's daughter, Mabel Wysong, who was his secretary at that time, acted as the other witness. The instrument under which David Lynam claims title was dated March 4, 1939. Wysong took the acknowledgment and acted as a witness; Mabel Wysong was the other witness. This instrument covered five lots, numbered 24560 to 24564, inclusive. On August 29, 1941, Wysong drew a deed from Elnora Lynam and William Lynam to William and Eleanor Wentz, for lot numbered 24560. Wysong took the acknowledgment and was a witness; Mabel Wysong was the other witness. On August 29, 1941, Wysong drew a second mortgage from Wentz to Elnora Lynam for $1200.00 on lot numbered 24560. Wysong took the acknowledgment and acted as a witness. On October 4, 1943, Wysong drew a deed from Elnora Southwick to Mrs. Elnora Lynam for lots numbered 24561 to 24564, inclusive. This deed was executed for the purpose of placing the title in the married name of Elnora Lynam. Wysong took the acknowledgment and was one of the witnesses. This deed was filed for record on February 7, 1944, the date on which the will of Elnora Lynam was executed, which was drawn by Wysong and witnessed by him. In the will Elnora Lynam devised all her property, including the real estate, to Matilda Schueler, the plaintiff herein. After the death of Elnora Lynam the will was

given to Wysong by Mrs. Schueler for the purpose of filing it for probate. Wysong, acting as attorney for Matilda Schueler, filed the will for probate in the Probate Court of Montgomery County, Ohio. The will was probated May 6, 1944, and Matilda Schueler was appointed as Executrix. Wysong, acting as her attorney, prepared for and effected an appraisal of lots numbered 24561 to 24564, inclusive, as the property owned by Elnora Lynam at the time of her decease. Wysong made some effort to find a purchaser for said property and regarded Matilda Schueler as the owner. Also sometime prior to her death, Wysong prevailed on Elnora Lynam to sign an appeal bond in a case tried in the Municipal Court of Dayton, in which she was required to make a statement as to her ownership of real estate. She possessed no other real estate except the lots in question. What explanation does Wysong give for acting as counsel and in assisting in the consummation of these legal transactions, and what is his attitude respecting the legality of the instrument in question? Upon being questioned as to why he drew a will for Elnora Lynam disposing of real estate which was included in the deed in question, he testified as follows:

"Q. And in Item 2nd, 'I give, devise and bequeath all of my property, both personal and real estate to my beloved aunt, Matilda Schueler, of Dayton, Ohio.'
A. Yes, that's the way she wanted it.
Q. She wanted to include her real estate, didn't she - -
A. Of course, - -
Q. Answer my question.
A. I thought she figured that, and at that time I wasn't —I thought she ought to have it, I didn't know; Dave acted kind of queer to me generally and I didn't think that - - figured Aunt Till should have it; that's the way I figured at that time; then is when she wanted me to destroy the deed.
Q. When did you change your figuring?
A. I didn't change my figuring."

Upon being questioned about drafting other instruments, he testified as follows:

"Q. MR. DURST: And yet with that deed in your possession for a period of over five years you continued to draft instruments related to this same property to other persons, didn't you?
A. She came up, yes, and had it done, yes.
* * * * * * * *

Q. How do you explain Mr. Wysong, the fact that you a lawyer, practicing here at the bar in Montgomery County, drafted at least three deeds conveying this same property, deeds and mortgages; drafted a will, made an application in the Probate Court of Montgomery County, Ohio, reciting that Elnora Lynam was the owner of this real estate; sent appraisers out to appraise it, obtained a prospective purchaser, in the face of what you have already said it had already been conveyed to David Lynam.

A. The truth of it is I didn't want Dave to get the property.

Q. Were you making yourself a party to defeat him then?

A. No, I didn't do that at all.

Q. Why didn't you consider this deed a conveyance all this time?

MR. BARGER: Objection.

THE COURT: He may answer that question.

Question read

A. I don't know except when they came up and wanted this done I did it; maybe I had forgotten some things too, when you get as old as I am you might forget. If you go on your tirading you will be worse than I."

MR. DURST: Objection.

THE COURT: Stricken.

A. Any amount of people come up and I don't keep tab of their business or a deed I made out. I wanted her to get the property instead of Dave, that's the truth of the matter."

Upon being questioned concerning his attitude on the sale of the property by Matilda Schueler, he testified as follows:

"Q. You called her to see if she would sell it?

A. No, I called her and talked to her told her I had a party I believed would pay $5250 and she says 'It is already sold.'

Q. And if she would have agreed to sell it you would have conveyed it, wouldn't you?

A. I might have, can't tell what I would have done then, might have done that."

This testimony is consistent with the contention that Elnora Lynam and William Lynam signed a form deed in blank. Wysong was ready and willing to consummate a sale of said property on the basis that said property was owned by Matilda Schueler, the sole devisee of Elnora Lynam, deceased. When

he learned Matilda Schueler had sold the property he prompt-
ly changed his attitude. What the motive was which caused
him to change his attitude may best be found in the facts and
circumstances herein narrated.

When counsel has personal knowledge that his client owns
certain property and, over a period of years, counsels with his
client and renders legal service in the consummation of trans-
actions of a legal character, such as drafting and the execution
of deeds, mortgage and will, and makes appearances in a court
of record, and conducts legal proceedings in said court on the
assumption that the client was the owner of said property,
he cannot be heard to say after the death of the client that
said client did not own said property, especially when there
is evidence of strong probative value to the effect that the in-
strument in question was signed in blank upon his legal ad-
vice, to be used upon death as a substitute for a will in the
settlement of the estate, which instrument was secreted and
withheld from record until after the death of the client. We
are not unmindful that a deed, properly acknowledged and
witnessed and filed of record is entitled to great weight. **Vol.
33 O. Jur. page 939, Sec. 135.** However, this instrument is not
attacked on the ground that it was not signed by Elnora and
William Lynam, but it is contended, and there is clear and con-
vincing evidence to support the claim, that the instrument was
signed in blank and was intended as a substitute for a will
in passing property after death between Elnora and William
Lynam. While an instrument which purports to be a deed,
drawn and executed in proper form, is entitled to great weight
in the proper case, under the circumstances in this case, and
in the light of the evidence adduced, much greater weight
should be given to the series of legal transactions participated
in by counsel, which completely and entirely refutes any con-
tention that said instrument was intended to be a conveyance
of the property to David Lynam.

An attorney-at-law is a member of an honorable profes-
sion and the relationship which he occupies toward his client
is of a highly confidential character. The consistent conduct
of counsel, therefore, has great evidentiary value. The court
will give great probative value to evidence showing that an
attorney-at-law, in the representation of a client, engaged in
numerous legal transactions over a period of years and pur-
sued a consistent line of conduct, including personal appear-
ances in and representation to courts of record, all of which
were based on the continued existence of a fact, to-wit: the
ownership of certain property by the client, of which the

attorney-at-law at all times had personal knowledge, and the court will give little weight to the testimony of such attorney who, after the death of said client, claims that said client did not own said property, but had passed it to another by an instrument of conveyance which was not produced until after the death of the client, the validity of which is seriously questioned. There is much evidence of a substantial character which refutes the contention of the defendant and supports the claim of the plaintiff. We are of the opinion that Elnora Lynam and William Lynam signed the instrument in question in blank. Obviously, this was a void deed, and in the absence of authority, it could not become valid by writing or filling in the essential parts of the instrument over their signatures. The filling in or completion of the instrument after the death of Elnora Lynam was a nullity. In **Vol. 13 O. Jur. page 834, Sec. 18**, the applicable rule of law is stated:

"The ancient law was well settled that a valid deed could not be made by writing it over a signature and seal made upon a blank or an empty sheet of paper. There is no decision by which the ancient doctrine has been overturned. Authority to fill one particular place falls short of an authority to make an entire deed."

The text just quoted from O. Jur. is supported by the case of **Ayres v Harness, 1 Ohio 368, 372.** See also Vol. 32 A. L. R. 737.

Under the facts and circumstances in this case the court finds the plaintiff has sustained the burden of proof by clear and convincing evidence.

The court decrees the cancellation of the instrument purporting to be a deed of conveyance of lots 24560, 24561, 24562, 24563 and 24564 from Elnora Lynam to David Lynam, dated March 4, 1939, and filed for record May 18, 1944, and recorded in Deed Book 1051, page 307 of the Deed Records in the Recorder's Office of Montgomery County, Ohio, and having found that Matilda Schueler is the owner of said real estate, it is ordered that title to said real estate be quieted as against the defendant, David Lynam, and all persons claiming under him. Costs are assessed against the defendant-appellant.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.