THE STATE OF OHIO, APPELLEE, *v.* MANN, APPELLANT.

[Cite as State *v.* Mann (1985), 19 Ohio St. 3d 34.]

(No. 84-1615—Decided August 9, 1985.)

*Daniel N. Gerin,* city prosecutor, for appellee.
*Mark S. Gervelis* and *Michael S. Harshman,* for appellant.

CELEBREZZE, C.J.

I

Our first inquiry concerns the trial court's admission, over objection, of evidence which demonstrated appellant's earlier violation of a court-ordered civil injunction which limited picketing at the hospital. Appellant's counsel filed a pretrial motion *in limine* which requested the court to exclude "[e]vidence of or reference to any Civil injunctions or restraining orders issued by any court with regard to the strike at Trumbull Memorial Hospital that may have been in effect on October 13, 1982." The stated basis of defense counsel's motion was to prevent bias, prejudice and confu-

sion of the jury. The motion was overruled as was defense counsel's trial objection when the prosecutor cross-examined appellant relative to his knowledge and violation of the injunction.[2]

The court of appeals held the testimony concerning the injunction was proper for purposes of impeachment and to attack appellant's credibility. The prosecution's stated purpose in raising appellant's alleged violation of the injunction was "that it goes to the fact of his violating the law in general" and because "it shows a tendency on his part to disregard the law."

Prosecution evidence that a defendant has committed other crimes, wrongs or acts independent of the offense for which he is on trial is not generally admissible to demonstrate that the defendant has a propensity for crime or that his character is in conformity with the other acts. Evid. R. 404(B); *State* v. *Adams* (1978), 53 Ohio St. 2d 223 [7 O.O.3d 393], paragraph three of the syllabus, vacated in part on other grounds (1978), 439 U.S. 811.[3] As we observed in *State* v. *Lytle* (1976), 48 Ohio St. 2d 391 [2 O.O.3d 495], at 401-402, vacated in part on other grounds (1978), 438 U.S. 910:

"Generally, the prosecution is forbidden to introduce initially evidence of the accused's bad character, unless and until the accused gives evidence of his good character. Although character is not irrelevant, the danger of prejudice outweighs the probative value of such evidence. The danger of prejudice is at its highest when character is shown by other criminal acts, and hence the rule that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially rele-

---

[2] The prosecutor queried appellant as to whether he had to appear in common pleas court for violating the injunction.

"Q. [Prosecutor Gerin:] Okay. Now, you had been involved in problems at the hospital before; had you not?

"A. Well, I know what some of the problems were. The people needed food —

"Q. No, sir. I mean in regard to the Court Order as to picketing.

"A. I knew that there was an injunction, yes.

"Q. In fact, you had gone up to Common Pleas Court to respond to —

"ATTORNEY GERVELIS: Objection, your Honor.

"THE COURT: Overruled.

"THE WITNESS: Repeat your question.

"Q. You had gone up to Common Pleas Court to respond to the fact that you had been charged with Contempt of that injunction; is that not correct?

"A. That's correct.

"ATTORNEY GERVELIS: Objection.

"THE COURT: Overruled. You may have an exception."

[3] Evid R. 404(B) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

vant for some purpose other than to show a probability that the individual committed the crime on trial because he is a man of criminal character. * * *''

Evid. R. 404(B) specifically allows for admission of such evidence for certain other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Cf. *State* v. *Curry* (1975), 43 Ohio St. 2d 66 (to demonstrate similar scheme, plan or system and to prove identity). As such, other-act evidence "* * * is admissible, not because it shows that the defendant is crime prone, or even that he has committed an offense similar to the one in question, but in spite of such facts. * * *" *State* v. *Burson* (1974), 38 Ohio St. 2d 157, 158 [67 O.O.2d 174].

In this case we believe the state was impermissibly allowed to show that appellant had a propensity to commit crimes, *i.e.,* to infer from the fact that he had previously violated a civil injunction that he had likewise committed the crime charged. See *Curry, supra,* at 73-74; *Carter* v. *Simpson* (1984), 16 Ohio App. 3d 420, 423-424.[4]

Accordingly, the judgment of the court of appeals is reversed on this issue.

---

[4] We also find no merit to a contention that evidence of the civil injunction was admissible under Article VI of the Rules of Evidence to impeach Mann by attacking his credibility.

Pertinent to our inquiry in this case, the Rules of Evidence provide as follows:

"Rule 608, Evidence of Character and Conduct of Witness

"(A) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness * * *.

"(B) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness * * *."

"Rule 609. Impeachment by Evidence of Conviction of Crime

"(A) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement, regardless of the punishment whether based upon state or federal statute or ordinance."

We agree that once a defendant testifies, he puts his character trait of truth and veracity into issue just as does any other witness. Evid. R. 404(A)(3).

As noted, however, we believe the prosecutor's basis for introducing the evidence was to show appellant's penchant for crime and not his propensity for untruthfulness. Evidence of the bad moral character of a witness, as distinguished from the character trait for truthfulness or untruthfulness is inadmissible. *Schueler* v. *Lynam* (1947), 80 Ohio App. 325 [36 O.O. 32]. Mann's alleged violation of a civil injunction is not clearly probative of his character for untruthfulness (Evid. R. 608[B]) nor does it constitute a criminal conviction within the purview of Evid. R. 609(A). See *State* v. *Kamel* (1984), 12 Ohio St. 3d 306, 311.

## II

The second issue before this court concerns whether the trial court erred in excluding a videotape recording from evidence. Appellant sought to introduce a videotape which showed his conduct at the scene up to the time of his arrest, as well as that of the police and others present. Appellant sought to introduce the tape as an actual depiction of the incident which was relevant and admissible under Evid. R. 401 and 402.

Appellant argues that the tape is consistent with his testimony, demonstrates that the police singled him out from the crowd, and that he was not resisting arrest. Appellant contends that the true value of the tape is its tendency to support his version of the events and its conflict with the testimony of the arresting officer. The prosecutor asserted the videotape was not relevant and would be confusing to the jury. The court of appeals affirmed the trial court's exclusion of the tape, holding that the evidence "was not material to the charge of resisting arrest, it was properly excluded. * * *"

At the outset, we note that the state's challenge did not concern authentication or identification under Evid. R. 901 nor the best evidence rule (Evid. R. 1002). Rather, our inquiry is to ascertain whether the videotape evidence is relevant and admissible. Evid. R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[5]

"Under Evid. R. 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court. * * *" *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 264.[6] As such, "* * * '[t]he trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere.' * * *" *Maurer, supra,* at 265, quoting *State* v. *Hymore* (1967), 9 Ohio St. 2d 122, 128 [38 O.O.2d 198].

In this case, appellant was accused of resisting arrest in violation of R.C. 2921.33.[7] This statute does not require that a defendant be found

---

[5] Evid. R. 402 provides:

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible."

[6] Evid. R. 611(A) provides:

"The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

[7] R.C. 2921.33 provides in pertinent part:

"(A) No person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or another."

guilty of the offense for which he was arrested. As we shall discuss *infra,* appellant's contention that the police lacked probable cause to arrest him is an unpersuasive defense to the charge of resisting arrest. *Columbus* v. *Fraley* (1975), 41 Ohio St. 2d 173 [70 O.O.2d 335], paragraph three of the syllabus.

Rather, the relevancy of the videotape centered on its tendency to show that the conditions present at the time negated a finding that appellant violated the resisting arrest statute and/or were consistent with his claims of bad conduct by the police officers. We believe the tape was both illustrative of defense testimony and would have been helpful in contrasting or refuting prosecution evidence. The tape, viewed in a light most favorable to its proponent, could have a tendency to make appellant's defense more probable or the prosecution's contentions "less probable than it would be without the evidence." Evid R. 401.

Likewise, we do not find that "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury" (Evid. R. 403[A]) or "by considerations of undue delay, or needless presentation of cumulative evidence" (Evid. R. 403[B]).

We therefore hold that a videotape which shows the actual events immediately prior to defendant's arrest is relevant in defense against a charge of resisting arrest and is admissible provided the probative value is not substantially outweighed by the grounds for exclusion set forth in Evid. R. 403.

Accordingly, the judgment of the court of appeals is reversed on this issue.

### III

Appellant's last claim is that the trial court erroneously excluded evidence that the grand jury refused to return an indictment on the charge of aggravated riot. Appellant argues that the failure to indict demonstrates that the police lacked probable cause and that his arrest was unlawful.

As we indicated above, in a resisting arrest case it is not necessary for the state to prove that a defendant was guilty of the offense for which the arrest was made, in this case aggravated riot.

In *Fraley, supra,* at paragraph three of the syllabus, we held:

"In the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances."

As we recently observed in *State* v. *Pembaur* (1984), 9 Ohio St. 3d 136, 138:

"In altering the common-law rule granting a person the right to resist an unlawful arrest, the *Fraley* court deemed it preferable, considering the crunch of modern society, to resolve questions concerning the legality of

police conduct in the courts through peaceful means rather than on the street in potentially violent confrontation. * * *'' See, also, *Columbus* v. *Harris* (1975), 44 Ohio St. 2d 89 [73 O.O.2d 249]; *State* v. *Wenger* (1979), 58 Ohio St. 2d 336, 341 [12 O.O.3d 309].

We agree with the court of appeals which held the fact that a defendant was not found guilty of the underlying offense or that an indictment was not returned is not pertinent in a resisting-arrest trial. On balance, we find that any slight probative value of the "no-bill" evidence was substantially outweighed by the danger of confusing the issues or of misleading the jury. Certainly, there is no prejudicial error in excluding this evidence.

Accordingly, the judgment of the court of appeals is affirmed on this issue.

## IV

Having concluded that the trial court erred in admitting evidence of the injunction and in excluding the videotape, we must now determine whether the errors found warrant reversal.

We are of the opinion that the errors committed at the trial level were not harmless beyond a reasonable doubt. *State* v. *Leuin* (1984), 11 Ohio St. 3d 172, 175. As regards the "other-act" testimony we note that appellant's claimed violation of the civil injunction involved substantially similar conduct to that which appellant was accused of in the instant case and may have prejudiced the jury. Likewise, we believe the videotape, had it been admitted, would have tended to support appellant's defense theories and bolstered his testimony. Taken together, we are unconvinced that the errors "did not contribute to appellant's conviction in any meaningful degree. *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160, 166, at fn. 5; *Chapman* v. *California* (1967), 386 U.S. 18." *State* v. *Maurer, supra,* at 264.

Accordingly, the judgment of the court of appeals is affirmed in part, reversed in part, appellant's conviction is vacated, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part and*
*cause remanded.*

SWEENEY, LOCHER, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

HOLMES, J., concurs in part and dissents in part.

HOLMES, J., concurring in part and dissenting in part. While I agree with Part III of the majority opinion, I cannot join in the remainder, especially in the decision to grant a new trial.

Evidence that appellant attended the rally in violation of an injunction

was not prejudicial and thus properly admissible by the trial court. Evid. R. 404(A)(1) is a specific exception to the ban on propensity evidence. It states that whenever the accused introduces evidence of his own good character, then the prosecution may rebut with evidence of bad character.

In the instant case, appellant clearly asserted his own good character. On direct examination he testified about specific occasions when he helped organize an employees' credit union, organized a bloodbank and was responsible for helping people get their pensions. Appellant also asserted that he attended the union rally because "people * * * needed some help." He spoke of bringing food for strikers and their families as well as firewood for the coming cold weather. He further characterized his conduct at this rally as "usual." It is therefore difficult to accept that the evidence was prejudicial when appellant created the necessity for its use under Evid. R. 404(A)(1).

The trial court properly determined that the videotape evidence had only slight probative value, but could easily mislead or confuse the jury. The videotape in no way contradicted the testimony at trial of the arresting officers, against whom it presumably would have been used. The facts contained in the videotape were attested to by various witnesses for prosecution and defense. Furthermore, none of the recording showed the events at issue. Therefore, for purposes of the charge of resisting arrest, the videotape had only small importance and even less probative value.

On the other hand, by showing the videotape to the jury, appellant would have raised the impermissible inference that since the arrest may have been unjustified, a second charge of resisting arrest was without merit. The issue in the instant case was appellant's conduct of resisting arrest, not the aggravated-riot charge. The jury might easily have been misled or confused if the aggravated-riot charge had become a focal point.

Consequently, I would affirm the judgment of the court of appeals on both evidentiary rulings.