OPINION
By complaint filed July 5, 2000 in the Butler County Area III Court, defendant-appellant, John C. Dunham, Jr., was charged with domestic violence in violation of R.C. 2919.25(C).[1] The charge stemmed from an incident that occurred on July 4, 2000, wherein appellant allegedly threw several objects at his wife, Pamela Dunham ("Pamela"). On October 6, 2000, following a jury trial, appellant was found guilty as charged. He was subsequently sentenced accordingly. For the reasons that follow, we affirm appellant's conviction.
The jury trial revealed the following facts: On the evening of the incident, appellant and his stepson, Robert, were shopping for fireworks when Robert told appellant that Pamela's former husband (and Robert's natural father) had helped Pamela move furniture. Appellant became very angry and sped home. Once there, appellant went to the back yard where Pamela was sitting on a bench near an ornamental pond. Appellant opened and slammed the gate to the back yard several times. Then, appellant, who was about three feet away from Pamela, started throwing objects. Pamela testified that appellant threw a lit citronella candle in a metal bucket and a heavy metal water pump at her. Pamela sat crouched on the bench, trying to avoid the objects thrown at her, and screaming hysterically. Pamela testified she was afraid appellant was then going to grab a hold of her and hurt her. Pamela also testified that all the while, appellant was screaming profanities and making statements such as "I'm going to get rid of you. I can take care of you."
Appellant admitted being very angry and slamming the gate several times. While he admitted throwing objects, he denied throwing them at Pamela. In appellant's words, had he wanted to hit her, he would have had no problem doing so since she was very close to him. Appellant testified he did not intend to harm his wife. Appellant also testified that Pamela was not screaming and "was not afraid of [him] one bit." Appellant did admit telling Pamela he was going to take care of things. It is undisputed that Pamela was not struck by any of the items thrown by appellant.
Appellant subsequently entered his home, pulling and slamming the sliding door several times. Pamela called the police. West Chester Township police officer Ian Stegmaier, who was one of three officers dispatched to the Dunhams' house, talked to appellant who admitted the following:
 He stated that uh, he was angry when he returned home that evening at his uh, wife and that he uh, yelled some obscenities out of anger at her. And picked up a fountain and threw it. Uh, he was careful to tell me that he wasn't throwing it at her. Uh, also said that in the uh, course of his yelling at Ms. Dunham he uh, stated that he was uh, quote, everything would be taken care. And he was also very careful to tell me that uh, what he meant by that was he was going to hire a private investigator to follow her to see what she was doing. But not threaten her in any way.
 Another police officer dispatched to the scene observed a metal bucket candle laying on the ground near the bench.
At trial, during Pamela's cross-examination, defense counsel asked her "Has [appellant] ever caused actual physical harm to you?" Pamela replied twice that he had. Defense counsel then asked Pamela whether she recalled telling him at a July 2000 hearing "that [appellant] had never caused any physical harm to [her]." Pamela replied that she did "not remember telling [him] at that time[.]" On redirect, the prosecutor asked Pamela to elaborate her testimony as follows:
 Q: [Defense counsel] asked you a question earlier about whether [appellant] had ever caused you physical harm, has he?
A: Yes he has.
Q: Okay. Can you describe what he did to you?
 A: There was uh, an incident several years back, four year [sic] ago where he had me pinned up against a wall in the kitchen, in the house that we lived in in West Chester and he punched at my face and I moved and he, while he had me pinned and he broke his hand into the wall.
 Defense counsel asked to approach the bench, and moved for a mistrial.[2] The trial court denied the motion. Following the denial of his motion, defense counsel never moved for a curative jury instruction. Despite the trial court's statement on the record that it had instructed the jury to disregard Pamela's statements, that admonition is not present in the record before us. Appellant now appeals and raises as his sole assignment of error that the trial court erred by denying his motion for a mistrial. Specifically, appellant argues that Pamela's foregoing testimony was inadmissible prior bad acts evidence in violation of Evid.R. 404(B).
A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred, unless the substantial rights of the accused are adversely affected. State v. Reynolds (1988),49 Ohio App.3d 27, 33. Rather, a mistrial should be ordered "only when the ends of justice so require and a fair trial is no longer possible."State v. Franklin (1991), 62 Ohio St.3d 118, 127, certiorari denied (1992), 504 U.S. 960, 112 S.Ct. 2315.
The granting or denying of a mistrial rests within the sound discretion of the trial court, State v. Sage (1987), 31 Ohio St.3d 173, 182, and thus will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Williams (1975), 43 Ohio St.2d 88, 93. "Because a trial judge is in the best position to gauge the impact of any error on the jury, the trial court's decision whether to grant a mistrial due to something which has occurred during trial is entrusted to the court's discretion." Hamilton v. Kuehne (Sept. 8, 1998), Butler App. No. CA97-10-198, unreported, at 13.
Evid.R. 404(B) generally prohibits the introduction of evidence of past crimes, wrongs, or acts in order to show that the defendant has a propensity for crime or that his character is in conformity with the other acts. State v. Mann (1985), 19 Ohio St.3d 34, paragraph one of the syllabus. However, the evidence "may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).
Upon reviewing the record, we find that the trial court did not abuse its discretion by denying appellant's motion for a mistrial. The prosecutor's question was asked to elicit further information about a topic specifically raised by defense counsel during his cross-examination of Pamela. Appellant's prior act was at least arguably admissible to prove lack of mistake or accident under Evid.R. 404(B). Appellant, according to Officer Stegmaier's testimony, claimed that he was not throwing the items at Pamela, thus having no intent to cause the victim to believe she was subject to imminent physical harm. The trial judge was in the best position to assess the effect of the testimony on the jury.
In light of all of the foregoing, we therefore find that the trial court did not err by denying appellant's motion for a mistrial. Appellant's sole assignment of error is overruled.
Judgment affirmed.
VALEN, P.J., and KERNS, J., concur.
Kerns, J., retired, of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.
[1] R.C. 2919.25(C) provides that "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."
[2] There is no record of this side bar discussion. However, at the conclusion of the state's case-in-chief, the following information was placed in the record out of the jury's presence:
 [Defense attorney]: Yes Your Honor ***. Just *** as a matter of uh, reference for purposes of any potential appellate review uh, I wanted to make it clear that at the time that uh, [Pamela] was being uh, I believe cross examined she talked about an ev an alleged act of domestic violence or potential harm which occurred approximately five years ago. Uh, I believe that the issue itself was so prejudicial and it was not in response to a direct question as to prevent [appellant] from getting a fair trial. And I believe that *** the jury was so tainted by that response *** and a variety of other things that even a curative instruction would not *** clear that taint. *** I want to make it clear that at that point in the record I did *** move for a mistrial and I believe that the court ruled on it but I wanted to make sure that it was on the record and that uh, I presume the prosecutor will stipulate that I did make that motion at that time. ***
 Prosecutor: That's correct Your Honor he did make that motion for mistrial. ***
***
 [Defense attorney]: Her response was clearly prejudicial. And I know nobody wants to trial [sic] this case over again Your Honor but uh, I really think he was hurt by that.
 Judge: Well, court also notes that *** defense had uh, opened up the issue by asking this particular witness whether *** [appellant] has uh, physically harmed her in the past. Are there any other incidences [sic] of physical harm. And uh, I think that opens up the door. Court has instructed the jury to disregard uh, the statements that were made by the witness and uh, the court therefore denies the *** mistrial.