**The STATE of Ohio, Appellee,**

**v.**

**FERGUSON, Appellant.**

[Cite as *State v. Ferguson* (1991), 71 Ohio App.3d 342.]

Court of Appeals of Ohio,
Butler County.

No. CA90–02–036.

Decided March 4, 1991.

*John F. Holcomb,* Prosecuting Attorney, and *Daniel J. Gattermeyer,* for appellee.

*T. Randall Turner,* for appellant.

*Per Curiam.*

This cause came on to be considered upon an appeal from the Butler County Court of Common Pleas.

On July 24, 1989, defendant-appellant, Bruce Ferguson, Sr., and his son, Bruce Ferguson, Jr., loaded up a shopping cart with merchandise inside a Middletown K–Mart department store. Appellant and his son left the shopping cart at the lawn and garden area, an open-air, fenced-in patio attached to the K–Mart store, and proceeded to leave the store. At 9:20 p.m., appellant and his son returned to K–Mart and parked their car near the lawn and garden area. Appellant took a pair of bolt cutters, cut the lawn and garden fence, and loaded the trunk of the car with the merchandise from the shopping cart.

Before appellant and his son were able to drive away, they were approached and questioned by Middletown Police Officer Walter Reeve. Shortly there-

after, Police Officer David Brinkman arrived. According to Reeve, when he asked appellant to give him an answer for what he and his son were doing, appellant walked over to Reeve's police cruiser and slashed the front tire with a small razor knife. Reeve attempted to arrest appellant but a struggle ensued and Reeve was knocked unconscious. Appellant testified that the struggle occurred only after Reeve began to hit him with a flashlight.

Officer Brinkman intervened but was hampered in his effort when appellant's son came to appellant's aid and began to hit Brinkman. During the ensuing struggle, Brinkman lost control of his gun. After diving on top of the gun, Brinkman stated that appellant began to beat him in the head and face area and that appellant's son kicked him in the ribs until appellant was able to retrieve Brinkman's gun. Fearing he would be shot, Brinkman feigned unconsciousness. Appellant and his son fled the scene with Brinkman's gun. Appellant testified that he struggled with the officer only after Brinkman pointed and cocked the gun at him.

Appellant and his son were arrested in Kentucky on July 24, 1989 and returned to Middletown. On August 17, 1989, appellant was indicted for two counts of felonious assault, in violation of R.C. 2903.11(A)(1); aggravated robbery, in violation of R.C. 2911.01(A)(2); burglary, in violation of R.C. 2911.12(A); possession of criminal tools, in violation of R.C. 2923.24(A); and disrupting public services, in violation of R.C. 2909.04(A). Due to the identity of the charges and overlapping proof, the trial court ordered that appellant and his son be tried jointly.

On December 20, 1989, appellant was found guilty on all six counts. The trial court sentenced appellant to concurrent terms of seven to twenty-five years as to the felonious assault and aggravated robbery charges, concurrent terms of one year as to the possession of criminal tools and disrupting public services charges, and a consecutive term of four to fifteen years as to the burglary charge.

Appellant filed this timely appeal and assigns as error the following:

Assignment of Error No. 1:

"The lower court erred in convicting defendant-appellant of allied offenses of similar import and imposing separate sentences on the conviction."

Assignment of Error No. 2:

"The lower court erred in convicting defendant-appellant of burglary as there was no occupied structure involved in the offense."

Assignment of Error No. 3:

"The lower court erred in allowing inappropriate statements to be made by the prosecution concerning defendant-appellant's pending unproven charges in another state."

Assignment of Error No. 4:

"Defendant-appellant did not receive effective assistance of counsel at trial."

Appellant contends in his first assignment of error that he should not have been convicted of and sentenced for both felonious assault upon a police officer and aggravated robbery because they are "allied offenses of similar import." We do not agree.

To ascertain whether appellant's conviction was permissible, we must turn to Ohio's similar acts statute, R.C. 2941.25, which provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

██ In applying this statute, the Supreme Court has held that R.C. 2941.25 authorizes a "trial courts, in a single criminal proceeding, to convict and to sentence a defendant for two or more offenses, having as their genesis the same criminal conduct or transaction, provided that the offenses * * * were not allied and of similar import * * *." *State v. Moss* (1982), 69 Ohio St.2d 515, 519, 23 O.O.3d 447, 449, 433 N.E.2d 181, 185. To determine whether multiple offenses are allied offenses of similar import, a recognized similarity must exist between the elements of the crimes committed. This test has been defined as meaning that "[t]he offenses and their elements must correspond to such a degree that commission of the one offense will result in the commission of the other." *State v. Logan* (1979), 60 Ohio St.2d 126, 128, 14 O.O.3d 373, 374, 397 N.E.2d 1345, 1348.

The elements for "felonious assault" are set out in R.C. 2903.11:

"(A) No person shall knowingly:

"(1) Cause serious physical harm to another[.]"

"Aggravated robbery" is defined under R.C. 2911.01 which, in pertinent part, provides:

"(A) No person, in attempting or committing a theft offense, * * * or in fleeing immediately after such attempt or offense, shall do either of the following:

"* * *

"(2) Inflict, or attempt to inflict serious physical harm on another."

▮ In an earlier decision, this court held that felonious assault and aggravated robbery do not correspond to such a degree that commission of the one offense will necessarily constitute commission of the other. *State v. Yenser* (Jan. 26, 1983), Butler App. No. CA82–04–041, unreported, 1983 WL 4270. For example, felonious assault requires the actual use of a deadly weapon or dangerous ordnance to cause or attempt to cause physical harm to another, whereas aggravated robbery requires the mere possession of a deadly weapon or dangerous ordnance. Additionally, aggravated robbery is complete upon the offender's purposeful attempt to inflict serious physical harm, whereas a charge of felonious assault requires an actual infliction of serious harm, unless a deadly weapon or dangerous ordnance is used. Appellant's first assignment of error is overruled.

Appellant's second assignment of error questions whether there was sufficient evidence to convict appellant for burglary. Specifically, appellant contends that a requisite element of the burglary offense was absent because appellant did not trespass in an occupied structure or any portion thereof.

▮ A reviewing court will not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132. After a careful review of the record, we find that there was sufficient evidence to justify a conviction.

▮ The offense of "burglary" is defined in R.C. 2911.12 as follows:

"(A) No person, by force, stealth, or deception, shall trespass in an occupied structure as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense as defined in section 2913.01 of the Revised Code, or any felony."

R.C. 2909.01, in pertinent part, defines "occupied structure" as follows:

"* * * any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

"* * *

"(D) in which at the time any person is present or likely to be present."

Although appellant's conduct occurred after closing, evidence presented shows that store personnel remained in and about the store. Thus, division (D) of R.C. 2909.01 is the relevant portion of the statute because K–Mart was an occupied structure during the time of appellant's theft.

Appellant apparently argues, however, that absent a roof, the fenced-in portion of the K–Mart store did not constitute a structure. The word "structure" itself is not defined in the Revised Code, nor is the word sufficiently defined to our satisfaction by the case law. In Black's Law Dictionary (5 Ed.1979) 1276, "structure" is defined as "any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner. That which is built or constructed; an edifice or building of any kind."

The word "building" is defined as "a structure or edifice inclosing a space within its walls, and usually, but not necessarily, covered with a roof." *Id.* at 176.

Relying on the Ohio Revised Code and the definitions found in Black's Law Dictionary, we conclude that a jury could infer that by including "other structure * * * or any portion thereof" within the definition of an occupied structure, the legislature intended the statute to encompass a fenced-in area that is attached to a department store. Finding substantial evidence existed upon which the jury could reasonably conclude that appellant was guilty beyond a reasonable doubt of the burglary offense, we overrule the second assignment of error.

The third assignment of error contends that the prosecutor acted improperly when he cross-examined appellant about a pending carrying-a-concealed-weapon charge. Appellant asserts that since he had not actually been convicted of this criminal offense, the reference to the charge was inappropriate and prejudicial.

It is clearly established in Ohio that the control of cross-examination lies within the sound discretion of the trial court. Absent a clear showing of an abuse of discretion, the trial court's discretion will not be disturbed. *State v. Ferguson* (1983), 5 Ohio St.3d 160, 5 OBR 380, 450 N.E.2d 265.

In the instant action, appellant testified on direct examination that he gave a false name and Social Security number to Reeve. During cross-examination appellant admitted that the reason he lied was because he feared the police would discover that there was a warrant for his arrest in Michigan. Appellant also testified that he believed the warrant for his arrest was based on retail fraud and not carrying a concealed weapon.

■ We are confident that the prosecutor did not act improperly in the trial proceedings. Under the "invited error" doctrine, "[a] party will not be permitted to take advantage of an error which he himself invited or induced * * *." *Lester v. Leuck* (1943), 142 Ohio St. 91, 26 O.O. 280, 50 N.E.2d 145, paragraph one of the syllabus. See, also, *State v. Seiber* (1990), 56 Ohio St.3d 4, 17, 564 N.E.2d 408, 422. Our review of the record reveals that appellant himself volunteered the information regarding the warrant for his arrest. The admission of this evidence was apparently used as a tactical advantage in that appellant would appear in a more favorable light to the jury if he stated why he lied to the police.

Finding no abuse of discretion by the trial court for permitting the questioning during cross-examination, we overrule appellant's third assignment of error.

Appellant's final assignment of error alleges that he was denied the effective assistance of counsel. In *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court outlined a two-part standard for determining whether trial counsel is deemed ineffective. A defendant must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

Appellant claims three instances in which his counsel was allegedly deficient. Two of these claims are intertwined with the previous assignment of errors and can be quickly dismissed.

Appellant first argues that counsel should have objected to his convictions for both felonious assault and aggravated robbery because these two offenses are allied offenses. We have already determined in appellant's first assignment of error that they are not allied offenses. An objection by counsel to appellant's conviction would therefore have been futile.

Second, appellant asserts that counsel should have objected to any inferences pertaining to appellant's pending charge in Michigan and that counsel should not have brought out appellant's prior conviction during the trial. We have already determined that since it was appellant himself who brought up the pending charge during direct and cross-examination, he cannot now take advantage of his own error. Regarding appellant's prior burglary conviction, it is accepted trial strategy for the defense "to 'draw the sting' of cross-examination by bringing out, on direct examination, facts that tend to discredit that party's own witness. * * * This is not done to impeach the witness, but to present an image of candor to the trier of fact." *State v. Tyler* (1990), 50 Ohio St.3d 24, 34, 553 N.E.2d 576, 590.

Finally, appellant suggests that since he was under the influence of amphetamines at the time he made statements to the police and consented to a search of his hotel room, his counsel erred in failing to file pre-trial motions to suppress the statements and evidence.

When determining whether a confession is voluntary, consideration of evidence indicating that the defendant may have suffered from a condition that impaired his volitional capacity is unnecessary, absent a showing of coercive police activity. See *Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473; *United States v. Newman* (C.A.6, 1989), 889 F.2d 88. In *Newman, supra,* the defendant confessed to FBI agents that he had stolen a tractor-trailer rig. He filed a motion to suppress his statements alleging that because his mental condition was a result of alcoholism, he was incapable of understanding the significance of his statement to the FBI. The court, relying on *Connelly, supra,* held that " ' * * * coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment.' " *Newman, supra,* at 95 (quoting *Connelly, supra,* 479 U.S. at 167, 107 S.Ct. at 522, 93 L.Ed.2d at 484).

Finding no evidence that appellant's consent to a search or statements were attributable to police misconduct, we overrule appellant's final assignment of error.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES, P.J., KOEHLER and WILLIAM W. YOUNG, JJ., concur.