Defendant-appellant Robert Tillett appeals from both his convictions after a jury trial for kidnapping, attempted murder, and attempted rape and the subsequent trial court judgment entry that stated he was to be automatically classified as a sexual predator pursuant to R.C. 2950.09 (A).
Appellant contends that, at his trial, the trial court erred in permitting "other acts" testimony to be introduced, the prosecutor made improper remarks during his closing argument and, further, defense counsel was ineffective. With regard to the trial court's classification of him as a sexual predator, appellant makes several constitutional arguments, contends the classification lacks an adequate evidentiary basis, and asserts the judgment entry is flawed.
This court has reviewed the record and concludes no error occurred at appellant's trial; therefore, his convictions are affirmed. Moreover, appellant's constitutional and evidentiary challenges to his designation as a sexual predator pursuant to R.C.2950.01 et seq. also are rejected. However, since appellant's argument regarding the trial court's judgment entry is persuasive, the order must be reversed and the matter remanded.
Appellant's convictions stem from an incident that occurred on the night of June 22, 1997. The following events of that night are gleaned from the testimony of the state's witnesses at appellant's trial.
At approximately 10:30 p.m., the victim was driving her car past the Rebound Lounge in the area of East 55th Street and Broadway Avenue in Cleveland, Ohio when she noticed appellant's car in the parking lot. She decided to stop there in order to speak with him.
The victim had been acquainted with appellant for some months from living and working in the neighborhood. A short time previous to the night of the incident, she had stayed at appellant's house for approximately one week during the time when her boyfriend had been serving a jail sentence for a DUI conviction. Appellant had permitted her to bring her pet cats to his house and to sleep on his living room sofa at night. Since she had not yet removed a few of her belongings from appellant's house, she decided to take advantage of the opportunity to speak with him about the matter.
When the victim entered the Rebound Lounge, she observed appellant apparently had been "drinking";[1] however, he was receptive to her request that she retrieve her possessions at that time, so appellant finished his beer and the two of them arranged to meet at his house within a few minutes.
Appellant's house was located only a short distance away at East 51st Place and Praha Avenue. Thus, the victim did not anticipate a wait once she arrived; however, appellant did not appear for nearly one-half hour. When appellant finally approached her car, he was on foot, "very upset, " and "hollering about his car." Appellant told the victim the car had ceased functioning as he crossed some unused railroad tracks on a nearby street.
Appellant then unlocked the only door of his house and permitted the victim to enter. As she proceeded to the bathroom to retrieve the cat litter box she had left there, appellant "was screaming" at her. She picked up the litter box; at that point, appellant "grabbed" her and began to "punch" her in the face. She dropped the box in an attempt to ward off the blows. Appellant pushed her head "into the commode, " hurled her "into the bathtub, " and then dragged her out and propelled her into his bedroom.
Once in the bedroom, appellant obtained a pair of "nunchucks"[2]
that had been hung over his closet door and began to beat the victim with them, calling her names as he did so. Appellant thereafter produced a serrated knife and attempted to stab the victim; she received a cut on her thumb when she attempted to remove the knife from his grasp. Appellant then broke a broom "over his knees" into two pieces and continued to strike her with it.
Appellant was able to remove the victim's clothes as he administered the beating. After he had done so, he demanded oral sex. Upon her refusal, appellant prodded her in both her vaginal and anal areas with one of the pieces of the broom; however, she was able to prevent him from penetrating her with it. During the ordeal, however, the victim sustained fractures of several ribs, a collapsed lung, and a fracture of her right ring finger.
As a result of the injuries she was suffering, the victim was sickened. When she informed appellant she would have to "throw up, " he refused to permit her to return to the bathroom; therefore, she became sick next to the mattress on the bedroom floor.
Eventually, appellant tired, and she waited for him to "pass out." When she was sure appellant was unconscious, although she was severely wounded, she dressed herself and went to the front door; however, she could not leave the house until she was able to remove a screwdriver appellant had driven into the floor to prevent the door from opening.
It was approximately 7:00 a.m. when the victim emerged from appellant's house. She proceeded to the loading dock of a nearby business establishment, where she requested the first person she observed to summon emergency services.
Thomas Harrison, a worker at Quality Stamping, located on the street adjacent to appellant's house, was the first worker to notice the victim that morning at the "second overhead garage door" of the building; "[h]er face was swollen up like the size of a basketball. Her eyes were swollen shut, all bleeding down her face." Her hands also seemed to be bleeding, she was crying, and she had difficulty both breathing and remaining upright. He telephoned for an ambulance.
Upon the victim's arrival at the hospital, she was treated for the following injuries: (1) a fracture of four ribs on her left side "with left pneumothorax and subcataneous emphysema consequent"; (2) hypoxia; (3) "condylar dislocation of the mandible"; (4) fracture of the right ring finger; and (5) laceration of the left thumb.
The police officer who subsequently responded to the hospital, Herman Dotson, observed the victim "had cuts and bruises all over." As he interviewed her, he requested the hospital's security guard to take photographs of her injuries.
The following day, the victim was interviewed by Police Detective Hugh Mills, who thereafter arranged for her car to be removed from "next to [appellant's] house" and proceeded to prepare a warrant for appellant's arrest.
On June 25, 1997, Mills went to appellant's house and found "the door was wide open." Mills saw appellant's father inside; he appeared to be "cleaning up." Appellant's father did not know of appellant's whereabouts but permitted Mills to "look around." During Mills' perusal of the inside, he observed "a large amount of cat litter and feces scattered all over the bathroom" and "a dried rust-colored pool, " which appeared to be vomit, in the bedroom "next to the foot of the bed." Mills later discovered appellant's car had been "impounded"; he went to look at it and noticed the car had "no significant damage" to it.
On July 31, 1997 appellant was indicted on four counts, viz.,
kidnapping, R.C. 2905.01; attempted murder, R.C. 2923.02/2903.02; and two counts of attempted rape, R.C. 2923.02/2907.02. A capias was issued for his arrest.
On August 29, 1997 appellant was arrested on the charges. He pleaded not guilty at his arraignment and was assigned counsel to represent him.
The record reflects numerous pretrials thereafter were conducted. Trial initially was set for November 24, 1997; however, on November 25, 1997 appellant's counsel made an oral motion to withdraw from the case. The trial court granted the request, immediately appointed new counsel, and, in view of appellant's signed waiver of his right to a speedy trial, permitted more pretrials to be conducted in the case.
On December 12, 1997 the trial court set a new trial date for February 3, 1998; however, the date was extended two more times at defense counsel's request. Eventually, appellant's trial was set for February 17, 1998.
On that date, appellant's trial proceeded as scheduled. The state presented the testimony of the victim, Thomas Harrison, the hospital security guard, Officer Dotson, and Det. Mills. The state also introduced into evidence copies of the victim's medical records and photographs taken of her injuries and the area around appellant " s house.
Following the trial court's denial of his motion for acquittal, appellant presented the testimony of a friend, James Dougall, and also testified in his own behalf.
Dougall stated that although he could not recall the victim's name, it was his belief that she and appellant had been having a sexual relationship during the time she had lived at appellant's house. Dougall admitted he had a previous conviction for domestic violence.
Appellant testified the victim had come to his house on the night of the incident after a discussion at the bar about continuing their relationship, "gave [him] oral sex, " then left in his car to obtain some "weed." Appellant stated that when she returned, she was "pretty beaten, " and told him his car was "up on the railroad tracks." Although appellant thought "she got in a wreck with the car, " his first concern apparently was for his vehicle since he stated he thereupon "went to get [his] car" but was unable to move it.
Appellant testified that when he returned to his house, the victim looked as she did in the photographs: "all swelled up and black and blue." He testified she was upset and had "a knife in her hand, " which "cut her when [he] pulled it away." Appellant further stated he was unable to convince her to go to the hospital, so he simply "went back to bed." He testified she was gone when he awoke in the morning. Appellant admitted he had previously made his own pair of "nun-chucks" and that he secured the door with a screwdriver in the floor. When questioned on cross-examination, appellant denied he would hurt either the victim or his estranged wife.
Upon the conclusion of appellant's testimony, the state was permitted to call as a rebuttal witness, without objection by the defense, appellant's estranged wife. She testified appellant had beaten her twice, both times after he had been drinking. She testified that the first time, appellant had not only "smacked" her with his open hand, he had placed a screwdriver to her forehead and attempted to "drill it" into her skin. She further testified that on the second occasion, appellant had demanded sex and had also threatened to cut off her ring finger if she did not remove her wedding ring. She also stated appellant owned a pair of "nunchucks," which he told her he had made himself.
Following closing argument, the trial court instructed the jury, which subsequently returned a verdict of guilty on the first three counts but not guilty on the remaining count. Approximately one week later, the trial court sentenced appellant to consecutive terms of incarceration of two to nine years on counts one and two, which were merged, and two years on count three.
The trial court then stated that in view of appellant's conviction for attempted rape, it must consider appellant's status pursuant to R.C. 2950.01, et seq. Although defense counsel did not object to the trial court's action, he argued appellant's conviction for attempted rape did not, in itself, qualify him as a sexual predator. The trial court perused the evidence adduced at appellant's trial, stated the statutory factors that it believed applied to appellant's case, and found appellant to be a sexual predator. The trial court's subsequent judgment entry indicated appellant was so classified pursuant to both R.C. 2950.09 (A) and (B). Its sentencing addendum was to the same effect.
Appellant has filed a timely appeal from his convictions and from his adjudication as a sexual predator. Appellant presents eleven assignments of error for review; the first three relate only to his trial.
Appellant's first assignment of error states:
 THE TRIAL COURT ERRED WHEN IT ADMITTED OTHER ACTS TESTIMONY IN VIOLATION OF R.C. 2945.59, EVID.R. 404 (B), AND MR. TILLETT'S RIGHTS UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Appellant argues he was deprived of his right to due process of law by the admission of evidence that he previously had beaten his estranged wife. Appellant's argument is unpersuasive.
Evid.R. 404 (B) states:
 Rule 404. Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes
* * *
 (B) Other Crimes, wrongs, or acts.
Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. (Emphasis added.)
R.C. 2945.59 comports with this rule of evidence and provides as follows:
§ 2945.59 Proof of defendant's motive.
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant. (Emphasis added.)
It is thus well settled in Ohio that evidence of other crimes, wrongs or acts occurring prior to or subsequent to, and independent of, the acts for which appellant is on trial is generally not admissible to show appellant's character or propensity for crime.State v. Williams (1988), 38 Ohio St.3d 346; State v. Mann (1985),19 Ohio St.3d 34, paragraph one of the syllabus. However,
 * * * if the other act does in fact "tend to show" by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible. (State v. Flonnory [1972], 31 Ohio St. 124, 128, 60 O.O.2d 95, 96-97, 285 N.E.2d 726, 729, followed.)
 State v. Broom (1988), 40 Ohio St.3d 277, paragraph one of the syllabus. (Emphasis added.)
Thus, the supreme court recently noted as follows:
 Likewise, in State v. Jamison (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, this court held in the syllabus:
 "Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404 (B). * * *
State v. Hill (1992), 64 Ohio St.3d 313, 323. (Emphasis added.)
The facts in Hill are similar to those in this case in that, since appellant not only denied he was the perpetrator of the injuries suffered by the victim but also denied being capable of inflicting physical harm on a woman with whom he had a relationship, the evidence that he previously had beaten his wife was relevant both to identity and a particular scheme, plan or system.
Appellant's wife stated appellant beat her only a few months prior to the incident with the victim, that it occurred after he had been drinking, and that appellant had used both a screwdriver and the threat of a knife as instrumentalities of his abuse. Moreover, he had demanded sex and had focused on her ring finger as an object of his anger. Thus, the relevancy of this testimony outweighed its prejudicial effect. State v. Elliott (1993),91 Ohio App.3d 763; see, also, State v. Smith (1990), 49 Ohio St.3d 137. Appellant, therefore, was not denied his right to due process of law by its admission.
Accordingly, appellant's first assignment of error is overruled.
Appellant's second assignment of error states:
 THE MISCONDUCT OF THE PROSECUTOR VIOLATED MR. TILLET'S RIGHTS TO A FAIR TRIAL GUARANTEED BY THE DUE PROCESS PROVISIONS OF ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Appellant argues the conduct of the prosecutor in calling appellant's wife as a witness and in subsequently referring to appellant in reference to her testimony as a "liar" deprived him of his right to due process of law. This court disagrees.
Generally, the conduct of a prosecutor during trial cannot be made a ground of error unless the conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. State v. Papp (1978), 64 Ohio App.2d 203, cited with approval, State v. Maurer (1984), 15 Ohio St.3d 239. Moreover, it has been held the trial court must afford the prosecutor some latitude and freedom of expression during argument. State v.Apanovitch (1987), 33 Ohio St.3d 19; State v. Vrona (1988),47 Ohio App.3d 145. Therefore, a defendant shall be entitled to a new trial only when a prosecutor makes improper remarks and those remarks substantially prejudice the defendant. See, e.g., State v.Smith (1984), 14 Ohio St.3d 13.
This court has previously reviewed appellant's contention concerning the introduction of "improper" evidence in considering the first assignment of error and has found it to lack merit; therefore, the actions of the prosecutor cannot be faulted on this ground. Appellant denied having physically harmed his wife; therefore, the prosecutor was entitled to test his credibility on this issue. State v. Mills (Mar. 20, 1998), Cuyahoga App. No. 69788, unreported.
Appellant's contention concerning the prosecutor's remarks during closing argument is similarly unsupportable. First, a review of the trial transcript reveals appellant invited these remarks. State v. Ferguson (1991), 71 Ohio App.3d 342; see, also,State v. Hartford (1984), 21 Ohio App.3d 291; State v. Woodruff
(1983), 10 Ohio App.3d 326.
As part of his defense strategy, appellant's counsel elected to minimize the damage appellant's wife testimony might have caused by discrediting her credibility during closing argument, reminding the jury that although she had made accusations of domestic violence, she had failed to pursue any legal remedies, including divorce. A review of the prosecutor's comments demonstrates they were made only in response to defense counsel's statements. Statev. Mills, supra. Apparently realizing this, appellant's counsel did not object to the prosecutor's comments.
Second, although generally a prosecutor may not give opinions concerning the credibility of a witness, such comments do not mandate reversal when the comments do not substantially or unfairly prejudice the defendant. See, e.g., State v. Henderson (Apr. 26, 1990), Cuyahoga App. No. 56828, unreported; cf., State v. Keenan
(1993), 66 Ohio St.3d 401. In light of the totality of the evidence against appellant, it cannot be said he would not have been convicted had the prosecutor not uttered the remarks. Cf.,State v. Smith, supra.
A review of the record, therefore, fails to indicate that the prosecutor's actions substantially prejudiced appellant and denied appellant his right to due process of law. State v. Apanovitch,supra. Error, if any, was harmless beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259; State v. Vrona, supra.
Accordingly, appellant's second assignment of error is overruled.
Appellant's third assignment of error states:
 MR. TILLETT WAS DENIED HIS RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEEN AMENDMENT (sic) TO THE UNITED STATES CONSTITUTION WHEN HIS ATTORNEY FAILED TO OBJECT TO THE RELEVANT PROSECUTORIAL MISCONDUCT.
Appellant argues defense counsel's failure to object to the prosecutor's comments during closing argument demonstrates he was deprived of his right to effective assistance of counsel. In view of this court's disposition of appellant's second assignment of error, however, his argument is unpersuasive.
In Ohio, a properly licensed attorney is presumed competent.State v. Smith (1985), 17 Ohio St.3d 98. One claiming ineffective assistance of counsel bears the burden of demonstrating the following, viz., (1) there has been a substantial violation of an essential duty owed to him by counsel and (2) he has been thereby prejudiced. State v. Lytle (1976), 48 Ohio St.2d 291; State v.Bradley (1989), 42 Ohio St.3d 136, citing Strickland v. Washington
(1984), 466 U.S. 668; see, also, State v. Smith, supra. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial court have been different." State v. Bradley,supra, paragraph three of the syllabus. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. State Smith, supra.
The record of this case with regard to trial counsel's actions fails to demonstrate his performance fell below an objective standard of reasonableness. As previously stated, counsel's strategy was to minimize the damaging effect of appellant's wife's testimony. See, e.g., State v. Hunt (1984), 20 Ohio App.3d 310. After making this tactical decision, counsel's subsequent objection to the prosecutor's comments would have been unavailing. A review of counsel's performance throughout the trial, moreover, reveals he was both fully prepared and a capable and diligent advocate for his client.
For the foregoing reasons, appellant can demonstrate neither that trial counsel's actions fell below an objective standard of reasonable representation nor that appellant was prejudiced by trial counsel's actions.
Accordingly, appellant's third assignment of error is overruled.
Appellant's convictions are affirmed.
Appellants remaining assignments of error relate only to the trial court's adjudication of him as a sexual predator. Appellant's strictly constitutional challenges to R.C. 2950.01 et seq.,
will first be considered.[3]
 VI. O.R.C. § 2950.01 ET SEQ., AS APPLIED TO APPELLANT, VIOLATES (SIC) ART. I, SEC. 10, OF THE UNITED STATES CONSTITUTION AS EX POST FACTO LEGISLATION, AND VIOLATES (SIC) ART. II, SEC. 28, OF THE OHIO CONSTITUTION AS RETROACTIVE LEGISLATION.
 VII. APPLICATION OF O.R.C. § 2950.01 ET SEQ. IN THE CASE AT BAR VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.
 VIII. O.R.C. § 2950.01 ET SEQ. IS (SIC) VOID FOR VAGUENESS SINCE IT COMPELS (SIC) A COURT TO MAKE A PREPONDERANCE DETERMINATION EASED UPON CLEAR AND CONVINCING EVIDENCE.
 IX. O.R.C. § 2950.01 ET SEQ., AS APPLIED TO APPELLANT, CONSTITUTES (SIC) DOUBLE JEOPARDY IN VIOLATION OF THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ART. I. SEC. 10 OF THE OHIO CONSTITUTION.
 X. THE PUBLIC NOTIFICATION PROVISIONS OF O.R.C. § 2950.01 ET SEQ. AS APPLIED TO APPELLANT, VIOLATE APPELLANT'S CONSTITUTIONAL RIGHT TO PRIVACY.
 XI. O.R.C. § 2950.01 ET SEQ. WITH ITS (SIC) LEGISLATED STIGMA OF PUBLIC NOTIFICATION, CONSTITUTES (SIC) CRUEL AND UNUSUAL PUNISHMENT, IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, SEC. 9, OF THE OHIO CONSTITUTION.
The above arguments have been considered by the Ohio Supreme Court in State v. Cook (1998), 83 Ohio St.3d 404, and by this court in State v. Ward (Jan. 28, 1999), Cuyahoga App. No. 72371, unreported. All were deemed meritless; hence, these assignments of error are overruled.
Appellant's fourth assignment of error states:
 THE TRIAL COURT ERRED WHEN IT FOUND "THE DEFENDANT IS AUTOMATICALLY CLASSIFIED AS A SEXUAL PREDATOR PURSUANT TO R.C. 2950.09 (A)." AND, "THE VICTIM HEREIN WAS UNDER THE AGE OF 18." WHERE THE RECORD DID NOT SUPPORT SUCH FINDING. (SIC)
Appellant argues the trial court's judgment entry is flawed as a matter of law. Appellant is correct.
The judgment entry states appellant is classified as a sexual predator pursuant to both R.C. 2950.09 (A) and (B). A review of subsection (A) of the statute, however, reveals it is inapplicable to a case such as appellant's. R.C. 2950.09 (A) applies only in those cases in which a "sexually violent predator specifications was included in the indictment, the defendant "is convicted of or pleads guilty to" a sexually violent offense, and the conviction or plea occurred "on or after" January 1, 1997.
It is apparent that the trial court intended to proceed pursuant to R.C. 2950.09 (B), which may be utilized as part of a sentencing hearing, although the trial court mistakenly pronounced appellant's sentence prior to conducting the sexual predator portion of the hearing, in contravention of the procedure set forth in subsection (B).[4]
Since subsection (A) is inapplicable to this case, the trial court's judgment entry classifying appellant as a sexual predator pursuant to both R.C. 2950.09 (A) and (B) is improper. It must therefore be reversed.
Accordingly, appellant's fourth assignment of error is sustained.
Appellant's fifth assignment of error states:
 THE EVIDENCE IS INSUFFICIENT, AS A MATTER OF LAW, TO PROVE "BY CLEAR AND CONVINCING EVIDENCE" THAT APPELLANT "IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENSES, " OR TRIAL COURT OTHERWISE ABUSED ITS DISCRETION IN MAKING SUCH FINDING. (SIC)
In this assignment of error, appellant essentially asserts that the evidence presented by the prosecutor was inadequate and that, therefore, the trial court's determination that appellant is a sexual predator lacks a proper basis. A review of the record renders appellant's assertion unpersuasive.
R.C. 2950.01 (E) defines a sexual predator as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." (Emphasis added.) Appellant's conviction for attempted rape qualifies as a "sexually oriented offense" pursuant to R.C. 2950.01 (D); however, the second prong of the definition also must be satisfied by clear and convincing evidence. R.C. 2950.09 (B) (3).
In making a determination as to whether an offender is a sexual predator, therefore, the trial judge must consider all relevant factors, including, but not limited to, the factors listed in R.C. 2950.09 (B) (2). Although R.C. 2950.09 (B) (2) does not require that each factor be met, it does require the trial court consider those factors that are relevant. See, e.g., State v.Tracy (May 20, 1998), Summit App. No. 18623, unreported. Moreover, when reviewing a trial court's decision based upon clear and convincing evidence, an appellate court must examine the entire record to determine whether sufficient and reliable evidence exists to satisfy the requisite degree of proof. State v. Schiebel
(1990), 55 Ohio St.3d 71.
The trial court in this case clearly was presented with evidence to support the first prong of R.C. 2950.01 (E)'s definition of sexual predator. Although the state acknowledged appellant had no prior convictions, and the trial court failed to order a presentence investigation and report prior to making its determination, nevertheless, there is sufficient reliable evidence in the entire record to support the trial court's decision.
The transcript of the hearing indicates the trial court carefully considered the relevant factors of R.C. 2950.09 (B) (2) as applied to the facts of appellant's attack upon the victim. Furthermore, the trial court also heard the testimony of appellant's estranged wife during appellant's trial, which provided evidence that appellant had engaged in similar behavior in the past.
In State v. Cook, supra, the supreme court indicated there may be sufficient evidence in the trial transcripts, victim statements, and/or presentence reports relating to the factors listed in R.C.2950.09 (B) (2) to support the trial court's determination. In this case, too, the record is adequate to demonstrate the trial court's determination was so supported. There are some cases, however, in which the use of expert testimony, whether such testimony is psychiatric, psychologic or criminologic, may be necessary to supplement the facts of a defendant's convictions based upon a single incident.[5] See, e.g., State v. Ward, supra; State v.Patterson (Feb. 11, 1999), Cuyahoga App. No. 72448, unreported.
Since this case is similar to the situation that existed in Cook, appellant's fifth assignment of error is overruled.
Appellant's convictions are affirmed. The trial court's judgment entry finding appellant to be a sexual predator pursuant to both R.C. 2950.09 (A) and (B) is reversed; both the judgment entry and sentencing addendum must be corrected to indicate appellant was adjudicated a sexual predator pursuant to R.C.2950.09 (B). This case is remanded for further proceedings consistent with this opinion.
It is ordered that appellee and appellant share equally the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J. and ANNE L. KILRANR, J., CONCUR
 PRESIDING JUDGE
KENNETH A. ROCCO
N.B. This entry is an announcement of the court's decision. See App.R. 22 (B), 22 (D) and 26 (A); Loc. App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22 (E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22 (E). See, also, S.Ct.Prac.R. II, Section 2 (A) (1).
[1] Quotes indicate either testimony given by a witness or exhibits introduced into evidence at appellant's trial.
[2] Testimony of the witnesses at appellant's trial indicated "nun-chucks," or correctly "nunchakus," are a martial arts weapon consisting of two "sticks," each approximately eight inches in length, connected by a metal chain.
[3] A review of the transcript of the hearing reveals appellant raised no objections to the proceedings on constitutional grounds; therefore, these assignments of error were waived. State v. Awan
(1986), 22 Ohio St.3d 120. Nevertheless, since they are easily resolved, this court will address them.
[4] Appellant neither asserts this confusion of procedure constituted reversible error nor indicates he failed to receive notice of the trial court's intent to consider his status as a sexual predator at the sentencing hearing. Cf., State v. Fussell
(May 20, 1999), Cuyahoga App No. 73713, unreported.
[5] See State v. Thompson (Apr. 1, 1999), Cuyahoga App. No. 73492, unreported, at 16-17, for a description of an ideal procedure for a trial court to follow in conducting a sexual predator determination hearing.