JOURNAL ENTRY and OPINION.
Defendant-appellant Beau Rogers appeals from his conviction after a jury trial for felonious assault with firearm specifications.
Appellant asserts the prosecutor tainted the fairness of his trial by making improper comments during closing argument concerning both appellant's failure to testify and the credibility of a police officer's testimony. Appellant further asserts his trial counsel's omission in neglecting to object to the prosecutor's comments amounted to ineffective assistance.
This court has reviewed the record and finds the prosecutor's comments were within proper bounds. Trial counsel's efficacy, therefore, cannot be challenged on that basis. Consequently, appellant's conviction is affirmed.
The series of events culminating in appellant's conviction began on the night of December 9, 1998. After completing his work at the Cleveland Stadium for that day, construction worker Charles Burdette did not drive to his home in Ashland, Ohio; rather, he joined some co-workers at a local drinking establishment. Thereafter, Burdette drove to the Cleveland neighborhood in which he previously had lived for twenty-two years, located in the vicinity of Denison Avenue and West 25th Street.
As Burdette already was somewhat inebriated, he had decided to increase his state of intoxication by purchasing some crack cocaine before proceeding to his uncle's home for the night. Burdette had purchased this substance "four to five times"[1] in the past from appellant. Thus, Burdette knew appellant sold the substance in the area and also lived there since Burdette had bought the drug from appellant "in front of his house" two weeks prior to this night. Burdette went to appellant's home, stopped his truck, and sounded his horn.
Appellant exited his home and signaled to Burdette to meet him in a nearby alley. Burdette complied. At that time, appellant entered Burdette's truck and displayed "two twenty dollar rocks." Burdette took one, then informed appellant, as appellant began to exit the truck, he did not have the money to pay for it but would pay the following day.
Appellant did not agree to this proposal, indicating that the drugs did not belong to him. Burdette, however, started to drive away, thereby unbalancing appellant. Burdette then "grabbed" appellant and became surly with him. In the face of Burdette's behavior, appellant acquiesced by telling Burdette to "keep the damn thing." Burdette then permitted appellant to exit the truck and continued to his uncle's home.
Burdette slept most of the following day, December 10, 1998. When he awoke, however, he came to regret his actions toward appellant. Burdette was in this frame of mind while beginning his trip home. He was driving on Denison Avenue when he observed appellant, seated on a bicycle, in front of a convenience store.
Appellant was conversing with another man, later identified as Andre Pierre.
Burdette stopped his vehicle and waved at appellant. Intending to "apologize," Burdette shouted at appellant to "come here." Appellant's response was to gesture in apparent disgust for Burdette to leave and to turn back to his conversation with Pierre.
Pierre spoke momentarily with appellant, then waved at Burdette in a motion Burdette interpreted as requesting a meeting with the two men in the alley behind the convenience store. Burdette wished to forestall anything "nasty" with appellant; therefore, he complied.
Upon Burdette's arrival in the alley, however, his attempts to explain his actions of the previous night made no impression. Pierre produced a .25 caliber gun from his pocket, then began firing the weapon at Burdette. Burdette was struck four times in the chest and the arms before he summoned the presence of mind to drive away. He was able to arrive at a nearby hospital before collapsing from his injuries.
Burdette's condition subsequently was stabilized. At that time, he spoke to police officers concerning the incident. Burdette indicated that he had seen his assailant once before in appellant's company; therefore, "Beau" would know the person who had fired the weapon. Burdette also gave the officers appellant's address.
Burdette's information was broadcast to other police units via radio. One of the police officers monitoring the broadcast knew appellant; accordingly, she proceeded to appellant's home. After he was placed under arrest, appellant gave an oral statement identifying Burdette's assailant as Andre Pierre. Appellant also voluntarily gave a written statement after he had been transported to the police station. Appellant indicated Pierre was the supplier of the drugs appellant sold.
Appellant and Pierre subsequently were indicted together on two counts as follows: (1) felonious assault, R.C. 2903.11; and (2) attempted murder, R.C. 2903.02/2923.02.[2] Both counts carried two firearm specifications. Appellant entered pleas of not guilty to the charges and retained counsel to represent him.
Appellant's co-defendant was tried separately; Pierre ultimately was convicted of the count of attempted murder. Appellant's case proceeded to trial after Pierre's sentencing hearing. The state presented the testimony of several police officers, Burdette, Pierre, and two other witnesses. The state also introduced into evidence numerous physical items such as a police videotape of appellant making a statement, photographs taken of the scene, Burdette's medical records, and the bullet casings recovered by the investigating officers.
Subsequently, the jury found appellant not guilty of the attempted murder charge but guilty of the charge of felonious assault with firearm specifications. The trial court thereafter sentenced appellant to a term of incarceration of three years on the firearm specifications, to be served prior to and consecutively to a term of eight years.
Appellant has filed a timely appeal of his conviction. Although he sets forth three assignments of error for review, his first two assignments of error actually present a single issue; therefore, they are addressed together as follows:
 I. PROSECUTORIAL MISCONDUCT DENIED THE APPELLANT HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL. THE PROSECUTOR IMPROPERLY COMMENTED ON THE APPELLANT'S DECISION NOT TO TESTIFY AT TRIAL IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS.
 II. THE PROSECUTOR IMPROPERLY VOUCHED TO THE VERACITY OF STATE'S WITNESS, POLICE OFFICER JAMES SIMONE, THEREBY DENYING THE APPELLANT HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.
Appellant argues comments made by the prosecutor during closing argument mandate a reversal of his conviction. Appellant contends some of the prosecutor's remarks were made in derogation of his right to remain silent. Appellant further contends the prosecutor rendered an opinion concerning the credibility of a state's witness. Since appellant's trial counsel made no objection to these remarks, appellant asserts the remarks constituted plain error.
Generally, the conduct of a prosecuting attorney during a trial cannot be made a ground of error unless the conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. State v. Papp (1978),64 Ohio App.2d 203, cited with approval, State v. Maurer (1984),15 Ohio St.3d 239. Moreover, it has been held a trial court must afford a prosecutor some latitude and freedom of expression during argument. State v. Apanovitch (1987), 33 Ohio St.3d 19; Statev. Vrona (1988), 47 Ohio App.3d 145. Therefore, a defendant shall be entitled to a new trial only when a prosecutor makes improper remarks and those remarks substantially prejudice the defendant. State v. Smith (1984), 14 Ohio St.3d 13. The appellate court determines whether, absent the prosecutor's improper statements, a jury would have found the defendant guilty.State v. Maurer, supra. Furthermore, plain error does not exist unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Underwood (1983),3 Ohio St.3d 12 at 14. Notice of plain error is to be taken only with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91; State v. Braxton (1995), 102 Ohio App.3d 28,41. A review of the record in this case reveals the prosecutor's remarks appellant challenges neither were improper nor amounted to plain error.
During his initial closing argument, the prosecutor made reference to the discrepancies in the oral statements appellant originally made upon his arrest. The prosecutor further compared appellant's oral statements to some of the other evidence presented during trial.
Defense counsel chose to rebut the prosecutor's interpretation of the evidence by reviewing in his closing argument the testimony of each witness "bit by bit."
Defense counsel began by focusing on the testimony of each police officer. Counsel pointed out minor inconsistencies in the officers' recollections of the events that occurred on the night of December 10, 1998. Upon arriving at the point at which the officers had recited the oral and written statements appellant had made, however, and in recounting that testimony, defense counsel's focus subtly shifted. Counsel began to make direct assertions attributable to appellant as if appellant, himself, had testified at trial. In pertinent part, defense counsel argued as follows:
 All right. [Appellant] admitted to his drug dealing. He admitted he got ripped off. We know the rock was fronted to him. He got ripped off, physically, literally.
* * *
 He was with Andre when Chuck Burdette came and saw them and, basically, told him (sic) that he left at that point, and he didn't know what happened. He told the officers that because he didn't know what happened. * * *
* * *
 The next testimony that we got was Officer Simone. As you recall, Officer Simone was the officer who stood here while we had to play the tape. And Officer Simone told us that he was not for sure — he could not testify for sure that Beau Rogers read that little printed sign printed on the screen of the car, that said you may or may not be taped right now. Underneath, Miranda Rights, and the no smoking sign, and all that at night. He was not able to say that Beau had read it.
 Now, while Officer Simone is up there, they (sic) make this big point that how could Beau possibly have known the shooter's name — or excuse me, the victim's name.
 Well, when questioned, I said "Officer, you are not in the presence of Beau when he was with other officers, isn't that correct?" And he said yes. And I said, "You, therefore, cannot tell us that they didn't say anything to him in regard to the name?" And he specifically said to me, "No, I can't speak for anybody that I was not with. I can only testify as to my knowledge." And so the assertion that because he didn't hear Chuck Burdette's name, that Beau Rogers didn't hear it from another officer, doesn't hold any weight. Beau Rogers heard this while other officers are in the house. He makes a statement to Cheryl Brown, and he starts talking about the drug transaction with her, with Chuck Burdette the next day. Common sense tells you everyone knew who they were talking about. `Cause now, on this great point, how could he have known, you know? He couldn't have known, had he not been there. It's been explained. He knew from other conversations with other officers. He knew that it had to do with the drug transaction, because the victim had said at the hospital it was over drugs. So Officer Simone said, "We made the tape, ladies and gentlemen. The tape speaks for itself."
* * *
(Emphasis added.)
After defense counsel had concluded his argument, the prosecutor began his rebuttal as follows:
 Thank you, your Honor. [You] [d]id * * * not hear, as [defense counsel] stated, any admission or apology from Beau Rogers, whatsoever. Beau Rogers did not take the stand here, and that's his right. But don't allow him to speak through his counsel, either. He had the opportunity. He choose (sic) to exercise his right, and that's fine. But don't allow that to happen. I sat through this trial the same as you did. And I was amazed to hear [defense counsel] recite the order of witnesses. And I wonder if we sat through the same trial, because he described Officer Thomas as being the first witness, and he described Officer Beveridge as being the second witness. He skipped right over Andre Pierre. That's not how it happened, folks.
 When Simone was on the stand — and Simone, to his credit, has long service in the police force. And he has long experience with testifying and with defense counsel. He pointed out repeatedly to [defense counsel], "No counsellor, that's not what I said." Or, "No, counsellor, that's not what happened." And he was very careful to keep [defense counsel] where the truth was.
* * *
 [Defense counsel] challenged Simone repeatedly on cross-examination about Simone's assertion of his testimony as to what was on [the] tape [of appellant's statement] * * * and what did we hear when we used [the tape], we heard the true set of events. * * *
(Emphasis added.)
The foregoing obviously demonstrates two important points. First, appellant's counsel's assertions in his closing argument as to what the evidence demonstrated invited the prosecutor's rebuttal of those assertions. State v. Brown (Mar. 19, 1998), Cuyahoga App. No. 71978, unreported; see also, State v. Ferguson (1991),71 Ohio App.3d 342.
Second, placing the prosecutor's statements in context, it is clear that he was not commenting on either appellant's silence or Simone's credibility but rather on appellant's counsel's tactics used in argument. In view of counsel's mischaracterization of the evidence, the prosecutor merely attempted to more accurately portray the testimony adduced. See, e.g., State v. White (Oct. 16, 1997), Cuyahoga App. No. 71188, unreported. Moreover, the prosecutor urged the jury to refuse to permit defense counsel to usurp its role in evaluating the evidence presented; indeed, the prosecutor reminded the jury it was to rely on its own memory of the testimony.
A review of the record thus demonstrates the prosecutor's comments in his closing argument neither exceeded the bounds of proper argument nor denied appellant his right to a fair trial.State v. Clemons (1998), 82 Ohio St.3d 438 at 452; State v.Girts (1997), 121 Ohio App.3d 539 at 567-68.
Accordingly, appellant's first and second assignments of error are overruled.
Appellant's third assignment of error states:
 THE APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
Appellant argues trial counsel was ineffective for his failure to object to the prosecutor's rebuttal comments made during closing argument. In view of this court's disposition of appellant's first two assignments of error, appellant's argument is unpersuasive.State v. Smith (Oct. 20, 1995), Lucas App. No. L-95-035, unreported.
Moreover, the claim of ineffective assistance of counsel requires proof that "counsel's performance has fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from counsel's performance. State v. Bradley
(1989), 42 Ohio St.3d 136, syllabus 2. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." Id., syllabus 3.
The burden is on defendant to prove ineffectiveness of counsel.State v. Smith (1981), 3 Ohio App.3d 115, cited with approval,State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id. In addition, this court will not second-guess what could be considered to be a matter of trial strategy. Id.
The record reflects defense counsel made a tactical decision in arguing appellant's lack of culpability for the crimes. Any objections to the prosecutor's rebuttal of counsel's arguments thus would have been in vain. State v. Revere (Dec. 11, 1998), Montgomery App. No. 17039, unreported.
Moreover, trial counsel's strategy was successful since the jury acquitted appellant of the most serious charge. Counsel comported himself in a professional manner, obviously was prepared, and was a zealous advocate for his client.
Under these circumstances, appellant has failed to demonstrate counsel's performance fell below an objective standard of reasonableness. Appellant's third assignment of error, therefore, also must be overruled. State v. Smith, supra.
Appellant's conviction is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
TERRENCE O'DONNELL, P.J. and PATRICIA A. BLACKMON, J. CONCUR.
 _______________________ KENNETH A. ROCCO, JUDGE
[1] Quotes indicate testimony given by a witness at appellant's trial.
[2] A third and fourth count, merely repetitive of the second, were both dismissed prior to trial.