OPINION
{¶ 1} Defendant-appellant Keison Wilkins appeals his conviction and sentence for one count of improper discharge of a firearm into a habitation, two counts of felonious assault, each with accompanying firearm specifications, and two counts of having a weapon while under disability, also each with accompanying firearm specifications. After one mistrial, one jury trial, *Page 2 
and one bench trial, Wilkins was found guilty of the above offenses and sentenced to an aggregate term of imprisonment of twenty-four (24) years to be served consecutively to the sentence imposed in a separate case in which Wilkins was also found guilty. Wilkins filed a timely notice of appeal with this Court on April 12, 2006.
 I Origin of Charges Represented by Counts 1 and 2 (with accompanying firearm specifications) in Indictment {¶ 2} On March 18, 2004, Donte Barnes was celebrating his birthday with friends at the Majestic Night Club in Dayton, Ohio. At some point Barnes walked outside the club to speak with a female acquaintance. Once the conversation ended, Barnes and his friend began walking back towards the club. At this point, Wilkins allegedly approached Barnes from across the street. Barnes testified that he and Wilkins stared at each other briefly, and then he began walking back to the club. Barnes testified that as he turned away, Wilkins shot him several times. Barnes was able to escape to safety, but he was shot six times.
 {¶ 3} 2) Origin of Charges Represented by Counts 3, 6, 7, and 8 (withaccompanying firearm specifications) in Indictment
 {¶ 4} On April 28, 2004, Reginald Brooks traveled to a residence he owned at 730 Faulkner Avenue in Dayton, Ohio. Brooks was having the residence remodeled, and that day, he was checking on the progress of the work being done. When he arrived at the residence, he parked his motor vehicle in front of 727 Faulkner Avenue, which was next door to the location being remodeled.
 {¶ 5} After observing what progress had been made in the residence and speaking with *Page 3 
the workers, Brooks called his friend, Anita Steward, and asked her to bring him some food. Shortly thereafter, Steward arrived, and she and Brooks ate and talked for approximately two hours before deciding to leave together to pick up Brooks' brother. As the two walked out of the residence towards Brooks' vehicle, Brooks noticed a man wearing a hooded sweatshirt moving in their direction. As soon as Brooks and Steward got into the vehicle, the man in the hooded sweatshirt opened fire on them. Brooks testified that after he heard the initial gunshot, he laid down on top of Steward to protect her as well as himself.
 {¶ 6} At some point, Brooks was able to peak over the dashboard of his vehicle and observe the shooter whom he identified as the appellant, Wilkins. Brooks testified that one month prior to the shooting, he had been informed by a friend that Wilkins had been hired to murder him. Based on this information, Brooks testified that he purchased a 9mm Glock handgun to protect himself from the eventual attack which he kept in his vehicle. Thus, while he was hiding in his vehicle, Brooks pulled the handgun out from under the dashboard and fired several shots through the windshield in Wilkins' direction. Once he heard Wilkins attempting to reload his rifle, Brooks exited his vehicle and fired a few shots at Wilkins, who also fired shots back at Brooks. Brooks testified that Wilkins then abruptly ran away from the scene.
 {¶ 7} Brooks then re-entered his residence at 730 Faulkner Avenue and found Steward who had run in the house when Wilkins had stopped firing to reload his rifle. Brooks testified that after he called 911 to report the shooting, he gave Steward his handgun and told her to leave in her vehicle. Once the police arrived, they determined that more than twenty shots hit Brooks' vehicle, and the rounds were fired from either an S.K.S. or an A.K.-47 Assault Rifle. Brooks also informed the police that the shooter was Wilkins. *Page 4 
 {¶ 8} Wilkins testified in his own defense that at the time of the shooting on April 28, 2004, he was in Akron, Ohio, with his girlfriend, Sereta Scruggs.
 {¶ 9} In light of the two separate shooting incidents, Wilkins was subsequently indicted on June 1, 2004, for three counts of felonious assault with a deadly weapon, each accompanied by a three-year firearm specification and a repeat violent offender specification. Wilkins was also indicted for two counts of having a weapon while under disability, each accompanied by a three-year firearm specification; two additional counts of having a weapon while under disability, each accompanied by a one-year firearm specification; one count of improperly discharging a firearm at or into a habitation, accompanied by a three-year firearm specification; and one count of burglary, accompanied by a one-year firearm specification. The State dismissed the burglary charge, and two of the having weapons while under disability charges, as well as the accompanying one-year firearm specifications.
 {¶ 10} On December 13-15, 2004, on the indictment involving Brooks, Wilkins was tried before a jury for two counts of felonious assault and one count of improper discharge of a firearm, each count with a firearm specification (hereinafter "the mistrial"). The jury could not reach a verdict, and the trial court declared a mistrial as to the counts before the jury, as well as to the one count of having a weapon while under disability, its attendant firearm specification, and the repeat violent offender specifications, which were tried to the bench. The matter was set for re-trial on January 31, 2005 (hereinafter "the second trial"). At the conclusion of the second trial, Wilkins was found guilty of all of the charges tried before the jury, as well as those tried to the bench.
 {¶ 11} On March 27-28, 2006, with respect to the indictment involving Barnes, Wilkins *Page 5 
was tried before a jury on one count of felonious assault, with its attendant firearm specification (hereinafter "the third trial"). Wilkins was tried to the bench on one count of having a weapons while under disability, its attendant firearm specification, and on a repeat violent offender specification. Wilkins was acquitted by the jury of the felonious assault charge, but the trial court found him guilty of having a weapon while under disability, with its three-year firearm specification.
 {¶ 12} As previously noted, Wilkins received an aggregate sentence of twenty-four (24) years imprisonment. It is from both of these judgments that Wilkins now appeals.
 II {¶ 13} Wilkins' first assignment of error is as follows:
 {¶ 14} "THE TRIAL COURT IN CASE ONE COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED AS ADMISSIBLE EVIDENCE, OVER THE OBJECTION OF DEFENSE COUNSEL, THE TESTIMONY THAT APPELLANT HAD RECEIVED A CRIMINAL CONVICTION IN A PRIOR CASE"
 {¶ 15} In his first assignment, Wilkins contends that the trial court erred when it allowed Brooks to testify in the second trial that he and Wilkins had been co-defendants in a criminal case twelve years prior to the instant case. Defense counsel objected to the admission of the testimony but was overruled. The trial court then instructed the jury that they could not consider the testimony for any purpose other than identification or motive. Brooks was then allowed to testify that he served a substantially shorter sentence than Wilkins did in the prior criminal matter. On appeal, Wilkins argues that the probative value with respect to identification and motive was outweighed by the prejudicial effect of the admission of the testimony regarding his *Page 6 
prior arrest and imprisonment.
 {¶ 16} "Given its superior vantage, the trial court enjoys broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse which had materially prejudiced an objecting party." Barbeck v. Twinsburg Twp. (1992), 73 Ohio App.3d 587,592, 597 N.E.2d 1204. Abuse of discretion requires more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 17} Pursuant to Evid. R. 404(B), "evidence that a defendant has committed other crimes, wrongs, or acts independent of the offense for which he is on trial is not generally admissible to demonstrate that the defendant has a propensity for crime or that his character is in conformity with the other acts." State v. Weatherspoon (Sept. 29, 1995), Montgomery App. No. 14459, citing State v. Mann (1985),19 Ohio St.3d 34, 482 N.E.2d 592. Evidence of other acts is only admissible for the limited purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, and it is only admissible if there is "substantial proof that the alleged other acts were committed by the defendant. State v. Jamison (1990),49 Ohio St.3d 182, 552 N.E.2d 180.
 {¶ 18} Because the admission of prior act evidence for even a limited purpose carries with it the inherent potential for prejudice, the standard for admitting such evidence is strict. State v. Broom (1988),40 Ohio St.3d 277, 533 N.E.2d 682. Moreover, even if the trial court determines that the other act evidence is admissible pursuant to Evid. R. 404(B), it may still be excluded pursuant to Evid. R. 403 if its prejudicial effect outweighs its probative value. State v.Robertson (Oct. 20, 1993), Montgomery App. No. 12016. *Page 7 
 {¶ 19} Evid. R. 403(A) provides:
 {¶ 20} "Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 21} In the instant case, the collateral matters of identification and motive were at issue, and evidence probative of them is admissible per Evid. R. 404(B) to prove Wilkins was guilty of the charged offenses, notwithstanding that the same evidence also proves that Wilkins was also guilty of a prior criminal offense. Brooks' testimony was relevant in demonstrating Wilkins' motive for the shooting and his identity as the shooter. We agree with Brooks that the fact that Wilkins received a much longer sentence for the prior offense than Brooks received is some evidence that a motive existed for Wilkins to attempt to gun down Brooks.
 {¶ 22} Additionally, the trial court only allowed the State to present evidence that demonstrated that Brooks and Wilkins were co-defendants in a prior criminal case and that Wilkins' sentence was substantially longer than Brooks' sentence. The trial court also curtailed any mention of the type of prior criminal offense committed. Moreover, the trial court provided the jury with a limiting instruction that evidence of Wilkins' prior conviction could not be used to demonstrate that Wilkins has a propensity for criminal behavior. The precautions taken by the trial court insured that the probative value of the prior acts evidence with respect to Wilkins' motive and identity would not be outweighed by any prejudicial effect on the jury.
 {¶ 23} Wilkins' first assignment of error is overruled.
 III {¶ 24} Wilkins' second assignment of error is as follows: *Page 8 
 {¶ 25} "DEFENSE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL IN CASE ONE."
 {¶ 26} In his second assignment, Wilkins contends that he received ineffective assistance of counsel in the second trial wherein Reginald Brooks was the complainant. In support of this contention, Wilkins asserts that his counsel's performance was deficient for the following reasons: A) failure to object to introduction of hearsay testimony offered by Brooks that someone informed him that Wilkins had been hired to kill him; B) failure to impeach the credibility of Brooks with respect to testimony he gave in the second trial that was inconsistent with testimony he offered in the mistrial; and C) failure to impeach the credibility of witness Jason Barnes with respect to testimony he gave in the second trial that was inconsistent with testimony he offered in the mistrial.
 {¶ 27} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, citingState v. Lytle (1976), 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135.
 {¶ 28} The above standard contains essentially the same requirements as the standard set forth by the United States Supreme Court inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. "When a convicted defendant complains of the ineffectiveness of counsel's *Page 9 
assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."Id. Thus, counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Id .
 {¶ 29} For a defendant to demonstrate that he has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, absent counsel's errors, the result of the trial would have been different. Bradley, supra, at 143. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, supra, at 694.
 {¶ 30} The arguments Wilkins submitted with respect to his claim for ineffective assistance of counsel will be discussed in the sequence presented in his brief.
 {¶ 31} "A. DEFENSE COUNSEL FAILED IN CASE ONE TO OBJECT TO INADMISSIBLE HEARSAY TESTIMONY OF REGINALD BROOKS THAT SOMEONE HAD TOLD HIM THAT APPELLANT HAD BEEN PAID TO KILL HIM"
 {¶ 32} In the first section of his second assignment, Wilkins argues that his counsel's performance was deficient for failing to object to the introduction of inadmissible hearsay testimony from Brooks. Essentially, Brooks was allowed to testify that a male acquaintance told him that he had been told that Wilkins had been hired to kill him (Brooks). This hearsay was communicated to Brooks approximately one month before the shooting occurred. *Page 10 
 {¶ 33} Brooks' testimony with respect to where he received the information that Wilkins had been hired to kill him was clearly hearsay and in violation of Evid.R. 802. After a thorough review of the record, we must conclude that it was seriously deficient for defense counsel to have failed to object to the admission of the hearsay testimony from the victim. Even if this testimony had some admissible basis in explaining why Brooks had a gun in his car at the time he was shot, the prejudicial impact of the inadmissible, hearsay testimony that Wilkins was paid to kill Brooks greatly outweighs any probative value of the admissible aspect of the testimony.
 {¶ 34} The prejudice element of the test for ineffective assistance of trial counsel under Strickland, supra, requires a showing that there is a reasonable probability that but for counsel's mistakes, the result of the trial would have been different. In light of the facts before us, we find that the test has been satisfied in this case.
 {¶ 35} During deliberations, the jury indicated that it was divided. The trial court gave the appropriate charge under State v. Howard
(1989), 42 Ohio St.3d 18, 537 N.E.2d 188, and sent the jury back into deliberations. Later, the jury asked to see, on videotape, the very portion of Brooks' testimony containing the double hearsay statement that somebody had told him that someone had said that Wilkins had been hired to kill Brooks. This was the only testimony in the trial that the jury asked to review during deliberations. The next day, with no further intervening communications from or to the jury, the jury convicted Wilkins. In our view, this sequence of events makes a sufficient showing that there is a reasonable probability that, but for the error of trial counsel in having failed to object to the hearsay statement, the result of the trial would have been otherwise.
 {¶ 36} "B. DEFENSE COUNSEL FAILED TO IMPEACH THE CREDIBILITY OF *Page 11 
WITNESS REGINALD BROOKS WHEN BROOKS MADE A STATEMENT INCONSISTENT WITH HIS PRIOR TESTIMONY IN CASE ONE, MISTRIAL."
 {¶ 37} In this section, Wilkins argues that defense counsel's performance was rendered deficient by his failure to question Brooks regarding his allegedly inconsistent statements concerning ownership of the handgun he used to defend himself on the day of the shooting. We hold that defense counsel's omission did not prejudice Wilkins' case to the extent that the outcome of the trial would have been different.
 {¶ 38} In the mistrial, Brooks provided the following testimony with respect to the handgun:
 {¶ 39} "Q: Sir, you indicated that this gun is, uh. . . is your gun?
 {¶ 40} "A: Was my gun, yes.
 {¶ 41} "Q: Okay. Uh. . . what happened to the gun?
 {¶ 42} "A: It's been sold.
 {¶ 43} "Q: Uh. . . on the — on the night of the incident, what happened to the gun?
 {¶ 44} "A: Uh. . . I gave it to Anita Steward and she left with it.
 {¶ 45} "Q: All right. Uh. . . why did you send the gun with Anita Steward?
 {¶ 46} "A: It was empty."
 {¶ 47} In the second trial, when questioned about the handgun by defense counsel, Brooks testified as follows:
 {¶ 48} "Q: Sir, do you know what happened to the gun that you used that evening?
 {¶ 49} "A: Mmm Hmm.
 {¶ 50} "Q: Can you tell us what happened to it? *Page 12 
 {¶ 51} "A: I got it back from Anita Steward.
 {¶ 52} "Q: Say again.
 {¶ 53} "A: I got it back from Anita Steward.
 {¶ 54} "Q: All right. Uh. . . and after you got it back, did you keep it, or did you. . .
 {¶ 55} "A: Returned it to its owner.
 {¶ 56} "Q: Just — you didn't sell it?
 {¶ 57} "A: No."
 {¶ 58} Wilkins contends that defense counsel's failure to question Brooks regarding his inconsistent statements with respect to the handgun constituted deficient performance on the part of counsel and severely prejudiced his entire case. We disagree. Although Brooks did testify inconsistently concerning whether or not he sold the gun or merely returned the gun to its owner, we find that the inconsistency is relatively insignificant, and it did not prejudice Wilkins in such a way that the outcome of the trial was affected.
 {¶ 59} Most importantly, we fail to see how defense counsel's decision to not attempt to impeach Brooks' testimony regarding the ultimate fate of the handgun prejudiced Wilkins' case to such a degree that the outcome of the trial would have been different. Other than his assertion that defense counsel's omission severely prejudiced his case, Wilkins completely fails to demonstrate how impeaching Brooks on such a minor point would have resulted in an acquittal of the charges against him. Clearly, the issue of whether the handgun was sold or returned to the owner was not a dispositive issue in the case, and defense counsel's failure to impeach Brooks' testimony in that regard does not result in a finding of ineffective assistance.
 {¶ 60} "C. DEFENSE COUNSEL FAILED TO IMPEACH THE CREDIBILITY OF *Page 13 
WITNESS JASON BARNES IN CASE ONE WHEN OFFICER BARNES MADE A STATEMENT INCONSISTENT WITH HIS PRIOR TESTIMONY IN CASE ONE, MISTRIAL."
 {¶ 61} Wilkins' final argument with respect to his assignment of ineffective assistance of counsel is that defense counsel failed to impeach the inconsistent testimony provided by Officer Jason Barnes with respect to the manner in which he investigated the shooting upon arriving at the crime scene. In the mistrial, Officer Barnes testified that he had canvassed houses in the immediate vicinity of the residence at 727 Faulkner Avenue by knocking on doors at "five to six houses both ways, both north and south from that location." Wilkins points outs, however, that during the second trial, Officer Barnes testified that he had canvassed all of the houses on the odd-numbered side of the street, beginning at Faulkner and Riverview "all the way up" the street.
 {¶ 62} Wilkins also points out that defense counsel was aware that Officer Barnes was testifying inconsistently as evidenced by an exchange in a sidebar conference with the trial court and the State's attorney, but counsel still chose not to impeach Officer Barnes' testimony in regards to how he canvassed the neighborhood. Wilkins argues defense counsel's failure impeach Officer Barnes on this point rises to the level of ineffective assistance. Again, we must conclude that defense counsel's decision not to impeach the officer's testimony on such a minor inconsistency did not prejudice Wilkins' case to such a degree that the outcome of the trial would have been different. Other than his assertion that defense counsel's omission severely prejudiced his case, Wilkins fails to demonstrate how impeaching Officer Barnes' testimony on such a minor point would have resulted in an acquittal. The issue of how Officer Barnes *Page 14 
canvassed the street where the shooting occurred was not a dispositive issue in the case, and defense counsel's failure to impeach Brooks' testimony in that regard does not result in a finding of ineffective assistance.
 {¶ 63} Wilkins' second assignment of error is sustained as it pertains to section "A" of the analysis. In all other respects, the assignment is overruled.
 IV {¶ 64} Wilkins' third assignment of error is as follows:
 {¶ 65} "THE TRIAL COURT IN CASE ONE COMMITTED REVERSIBLE ERROR WHEN, DURING JURY DELIBERATIONS, THE COURT GRANTED THE REQUEST OF THE JURY, OVER THE OBJECTION OF DEFENSE COUNSEL, TO VIEW A PORTION OF THE VIDEOTAPE OF THE TESTIMONY OF REGINALD BROOKS."
 {¶ 66} In his third assignment, Wilkins contends that the trial court erred when it granted the jury's request that a portion of Brooks' testimony be replayed for them to aid in their deliberations. Specifically, the jury requested that the court play back that portion of testimony in which Brooks states that someone informed him that Wilkins had been paid to kill him. Wilkins argues that the trial court should have denied the jury's request because that portion of testimony was inadmissible hearsay and should have been stricken the instant Brooks testified to it in the first place.
 {¶ 67} In light of our analysis of the first section of Wilkins' second assignment of error, the third assignment is rendered moot. Thus, we need not discuss whether the trial court abused its discretion in allowing the jury to re-view that portion of Brooks' testimony wherein he offers the prejudicial hearsay statement. *Page 15 
 V {¶ 68} Wilkins' fourth assignment of error is as follows:
 {¶ 69} "THE TRIAL COURT IN CASE ONE ALLOWED THE JURY TO REMAIN IN DELIBERATIONS FOR AN EXCESSIVE AMOUNT OF TIME AFTER RECEIVING INFORMATION THAT THE JURY WAS DEADLOCKED, RESULTING IN UNDUE INFLUENCE UPON THE DISSENTING JUROR OR JURORS."
 {¶ 70} In his fourth assignment, Wilkins contends that the trial court erred when it allowed to the jury to continue to deliberate for an inordinate amount of time after it should have been clear that the jury was deadlocked and unable to reach a verdict. Wilkins argues that the trial court abused its discretion when it failed to give the "impossible verdict" instruction when it appeared that the jury was hopelessly deadlocked. We disagree.
 {¶ 71} As the State points out, the jury in the second trial began deliberating sometime during the morning of February 3, 2005. At approximately 11:30 a.m. that same day, the jury informed the trial court that it was deadlocked. The trial court responded by instructing the jury pursuant to State v. Howard (1989), 42 Ohio St.3d 18,537 N.E.2d 188. The Howard charge consists of the following instruction:
 {¶ 72} "The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large portion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinion of others. You should consider it desirable that the case be decided. You are selected in the same manner, *Page 16 
and from the same source, as any future jury would be. There is no reason to believe that the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced that it is erroneous. If there is disagreement, all jurors should reexamine their positions given that a unanimous decision has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the desire to arrive at truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of the judgment not concurred in by all other jurors." Id., 42 Ohio St.3d at 25-26, 537 N.E.2d at 195.
 {¶ 73} "Rather than instructing the minority jurors to reconsider their position, the Howard charge asks all jurors to review their positions." State v. Washington (1998), 126 Ohio App.3d 264, 281,710 N.E.2d 307, 319. In the instant case, neither party objected to theHoward charge being read to the jury. By the end of the day on February 3, 2005, the trial court recessed without the jury having reached a verdict, and neither party objected or requested that further instructions be given at that time.
 {¶ 74} The jury reconvened for further deliberations on February 4, 2005. At approximately 3:00 p.m. that day, the jury reached a verdict finding Wilkins guilty of all of the charged offenses. At the same time that the jury informed the court that it had reached a verdict, the parties were discussing with the trial court whether an "impossible verdict" instruction *Page 17 
should be given. Wilkins argues that in light of the "excessive amount of time" that had passed, it was an abuse of discretion for the trial court to have failed to have given the "impossible verdict" charge prior to the jury having reached a verdict.
 {¶ 75} In State v. Brown (2003), 100 Ohio St.3d 51, 796 N.E.2d 506, we stated the following:
 {¶ 76} "Whether the jury is irreconcilably deadlocked is essentially `a necessarily discretionary determination' for the trial court to make.Arizona v. Washington (1978) 434 U.S. 497, 510, 98 S.Ct. 824. In making such a determination, the court must evaluate each case based on its own particular circumstances. State v. Mason (1998), 82 Ohio St.3d 144, 167,694 N.E.2d 932. There is no bright-line test to determine what constitutes an irreconcilably deadlocked jury."
 {¶ 77} In the instant case, although the jury deliberated for a lengthy period of time, we cannot conclude that the trial court abused its discretion in failing to sua sponte hold that the jury was irreconcilably deadlocked. After the jury initially informed the trial court that they were deadlocked, the trial court instructed them pursuant to Howard. Once this was done, the jury never advised the court again that were unable to reach a verdict. The fact that the parties were discussing the possibility of an "impossible verdict" charge with the trial court at the same time that the jury reached a unanimous verdict is irrelevant to the instant proceedings. Since there was no indication that the jury was unable to reach a verdict during their lengthy deliberations once the Howard charge was given, the trial court did not abuse its discretion in failing to give the "impossible verdict" charge.
 {¶ 78} Wilkins' fourth assignment of error is overruled. *Page 18 
 VI {¶ 79} Wilkins' final assignment of error is as follows:
 {¶ 80} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING APPELLANT GUILTY OF HAVING WEAPONS UNDER DISABILITY, AS THE GUILTY VERDICT WAS SUPPORTED BY INSUFFICIENT EVIDENCE."
 {¶ 81} In his final assignment, Wilkins contends that the trial court erred in the third trial when it found him guilty of having a weapon under disability because the evidence adduced was insufficient to support a finding that he was carrying a gun when he was arrested for shooting Donte Barnes.
 {¶ 82} "`[Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541, citing Black's Law Dictionary (6th Ed.1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 430, 1997-Ohio-372,683 N.E.2d 1096, citing Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 61 L.Ed.2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 83} In support of his contention that the evidence was insufficient to demonstrate that he was armed beyond a reasonable doubt, Wilkins points that neither Barnes nor the arresting officer who responded to the shooting saw Wilkins with a gun. *Page 19 
Wilkins also argues that no guns were recovered from the scene of the shooting. Wilkins asserts that the absence of any gun from the scene clearly demonstrates that he was not armed, and therefore, not guilty of having a weapon under disability.
 {¶ 84} Wilkins, however, ignores Barnes' testimony that, although he did not observe Wilkins with a gun, he saw a flash from Wilkins' direction when he was shot. Barnes also testified that when he was shot, Wilkins was the only individual in his vicinity. Moreover, Barnes was shot six times. We agree with the prosecution that when viewed in light most favorable to the State, this evidence was sufficient for a rational trier of fact to find that the State proved the crime of having a weapon under disability beyond a reasonable doubt.
 {¶ 85} Wilkins' fifth and final assignment of error is overruled.
 VII {¶ 86} In the first portion of the second assignment of error, we held that defense counsel was ineffective for having failed to object to Brooks' inadmissible hearsay testimony that he was told that Wilkins had been hired to kill him. Thus, this matter is reversed, and the cause is remanded for proceedings consistent with this opinion.
 FAIN, J. and GRADY, J., concur. *Page 1